[Civ. No. 5485. Fifth Dist. Aug. 27, 1982.]

In re the Marriage of JUDITH A. and ATTWOOD F. THORNTON.
JUDITH A. THORNTON, Appellant, v.
ATTWOOD F. THORNTON, Respondent.

502

## COUNSEL

Allen, Ivey, Cornell, Mason & Castellucci and Dennis A. Cornell for Appellant.

Eliceche, Tenenbaum & Lampe, Eliceche, Tenenbaum, Lampe & Fromson and Christopher W. Lampe for Respondent.

## OPINION

LaRUE, J.*—In this case we are called upon to determine whether there can be unique circumstances which would allow California courts to take jurisdiction over the dissolution of a marriage where neither of the parties is "domiciled" in this state. For the reasons to be explained, we hold that the actual residency of one of the spouses, coupled with unique circumstances, including the unavailability of a more proper forum, is enough to satisfy the jurisdictional requirements of Civil Code section 4530, subdivision (a).

An action for dissolution of marriage was brought in Merced County, California, on July 6, 1979, by appellant Judith A. Thornton, against respondent Attwood F. Thornton. In the petition, wife alleged that husband was a resident of California for the required period, and sought spousal support, support for their minor sons, division of community property and obligations, and attorney fees.

Husband was personally served in the County of Merced on July 10, 1979.

A notice of motion to quash proceedings under California Rules of Court, rule 1230, was filed by husband in which he asserted as grounds:

---

*Assigned by the Chairperson of the Judicial Council.

"1. There is a prior judgment pending between the same parties with the same cause.

"2. The residence required by Civil Code section 4530 is lacking."

After hearing, the trial court granted the motion without stating which of the two grounds it relied on.

## BACKGROUND

The facts are derived from the pleadings and declarations of the parties filed in connection with the motion to quash.

Husband's declaration outlined his Mississippi birth and early life and education at the University of Mississippi. He enlisted in the United States Air Force at Jackson, Mississippi, in 1960, and served in several different duty stations between 1960 and 1964. He left the air force in January 1964, and married wife in Jackson, Mississippi. Shortly thereafter, the parties traveled to San Francisco, California, to allow husband to attend an IBM training school for six months. He left halfway through, and went to Louisiana with wife. Shortly thereafter, he was voluntarily recalled to active duty in the air force and was assigned to Fort Lee, Virginia.

His next assignment was for one year to Johnston Island in the Pacific. During that period, wife went to Australia where she is a citizen.

Wife rejoined husband on his return and assignment to Tyndall Air Force Base, Florida, and their first son was born there in 1967. In August 1968, husband was assigned to Cincinnati, Ohio, where their second son was born in 1969.

Husband was assigned to Sandia Base, New Mexico, from July 1969, to August 1971. From there he transferred to Maxwell Air Force Base, Alabama, until July 1972. At that time he went to Viet Nam, returning in March 1973. While he was overseas, wife and the minor children lived with her sister in Manitoba, Canada.

From March 1973 until June 1977, husband served at Hickam Air Force Base, Hawaii. From June 1977 until the time of the order appealed from, husband served at Castle Air Force Base, Merced, California, as a lieutenant colonel.

The separation took place in November 1978. Wife and the children moved to Australia. Her pleadings were verified there.

Husband asserts he is not a resident of California, and that he is a resident of Florida. His declaration details that when he was stationed at Florida between 1966 and 1968, he started to think about becoming a legal resident of Florida. "At that time I formed the intent to change my domicile from the State of Mississippi to the State of Florida because I believed that upon retirement I would reside permanently in the State of Florida." On April 7, 1976, he signed a declaration of domicile and citizenship which was filed in Bay County, Florida. The declaration states he was formerly a legal resident of Mississippi, but since September 1975 has been a bona fide resident of Florida. In April 1979, husband registered to vote in Florida. Husband declares he is not required to and does not pay income tax in California, that his 1972 Oldsmobile station wagon was registered to him as a military nonresident of this state.

The parties purchased a home near Atwater, California, and lived there together until the separation. Husband declares that the home was purchased because wife believed that government housing was inadequate for the family. Husband still resided in the home at the time of these proceedings.

In late May, 1979, husband filed an action for dissolution of the marriage in Florida. In the petition, husband asserted he was "an actual, continuous, bona fide resident of the State of Florida...." On June 1, 1979, a notice to defend in the Florida action was sent by ordinary first class mail to wife, then known to be residing in Australia. The mail was not certified and no return receipt was requested. The notice required a response by July 6, 1979; otherwise, "a default will be entered against you for the relief demanded in the Petition." The notice to defend was also published on June 5, 12, 19, and 26, 1979, in the News-Herald, a daily newspaper published at Panama City, Florida. No notice to defend was ever published in a newspaper in Australia, where wife was known to be residing.

Wife in her declaration stated, "All documents I received from the State of Florida were received by me after the entry of the Final Judgment of Dissolution on July 19, 1979. These documents were received by me through regular mails, and not certified mail, and were apparently held up as a result of the mail strike in Australia." Furthermore, wife

stated, "At all times during the course of the Florida dissolution proceeding, my husband knew full well where I was, and where the minor children were. He knew full well we were not in the State of Florida and would not receive notice of the dissolution proceedings in the State of Florida through the publication in the Florida newspaper." She also stated that during the preceding five years neither she nor her children nor her husband had ever set foot in the State of Florida, they had no contacts whatsoever in the State of Florida, and they did not own any real or personal property in the State of Florida.

Wife's default was entered in the Florida proceeding on July 6, 1979, and on July 19 the court granted husband a final judgment of dissolution of the marriage, custody of the minor children to wife, child support in the sum of $150 per month per child, and $300 per month alimony to wife for a period of five years. The final decree in Florida made no reference to the disposition of the property of the parties.

Wife's California petition for dissolution listed as community property real estate in Colorado, Hawaii, Florida and Atwater, California, personal property, furniture, bank accounts and other items. She requested $750 per month spousal support, $250 per month per child, custody, attorney's fees and costs. She listed a 1975 MG automobile in addition to the 1972 Oldsmobile.

I.

*Should the Florida divorce be accorded full faith and credit by the California court.*

█ Wife contends the court could not have granted husband's motion to quash by recognition of the Florida divorce, because it is invalid. The invalidity argued is based on a lack of proper notice, and that husband was not a resident of Florida. In the court below the validity of the Florida divorce was not extensively argued, and, in fact, was almost ignored by the parties.

Wife's contention appears valid. First, wife did not receive adequate notice of the Florida proceeding. The notice she did receive arrived after the fact of the divorce. Nor was such notice given as was best calculated under the circumstances to give actual notice. (*Mullane* v. *Central Hanover Tr. Co.* (1950) 339 U.S. 306 [94 L.Ed. 865, 70 S.Ct. 652].)[1] Second, the Florida courts have interpreted their divorce juris-

---

[1]Even if wife's notice was adequate, the judgment was still susceptible to collateral attack when wife did not appear in court. (*Aldabe* v. *Aldabe* (1962) 209 Cal.App.2d 453 [26 Cal.Rptr. 208].)

diction statute to require actual, not constructive residence, "thus in effect imposing a requirement *additional* to that of mere legal domicile." (*Hostler* v. *Hostler* (Fla.App. 1963) 151 So.2d 672, 674, italics added.) In the case at bar husband was not an actual resident of Florida at the time of his divorce. Third, husband concedes the validity of the Florida divorce "is of little import to this appeal." The real issue is whether *California* is the proper forum to adjudicate the dissolution and the support and property rights of the parties.

## II.

*Does the California court have jurisdiction to grant a dissolution based on the husband's domicile in California.*

The other ground asserted by husband in his successful motion to quash the proceeding is that the residence required by Civil Code section 4530 is lacking.

Civil Code section 4530, subdivision (a), provides as follows: "A judgment decreeing dissolution of a marriage may not be entered unless one of the parties to the marriage has been a resident of this state for six months and of the county in which the proceeding is filed for three months next preceding the filing of the petition."

It is well settled in California that the term "residence" as used in Civil Code section 4530, subdivision (a), is synonymous with "domicile." (*Whealton* v. *Whealton* (1967) 67 Cal.2d 656, 660 [63 Cal.Rptr. 291, 432 P.2d 979]; *Smith* v. *Smith* (1955) 45 Cal.2d 235, 239 [288 P.2d 497]; *Johnson* v. *Johnson* (1966) 245 Cal.App.2d 40, 44 [53 Cal. Rptr. 567]; *Ungemach* v. *Ungemach* (1943) 61 Cal.App.2d 29, 36 [142 P.2d 99].) The difference between "residence" and "domicile" has been summarized in *Smith* v. *Smith, supra*, 45 Cal.2d 235, 239: "Courts and legal writers usually distinguish 'domicile' and 'residence,' so that 'domicile' is the one location with which for legal purposes a person is considered to have the most settled and permanent connection, the place where he intends to remain and to which, whenever he is absent, he has the intention of returning, but which the law may also assign to him constructively; whereas 'residence' connotes any factual place of abode of some permanency, more than a mere temporary sojourn. 'Domicile' normally is the more comprehensive term, in that it includes both the *act* of residence and an *intention* to remain; a person may have only one domicile at a given time, but he may have more than one phys-

ical residence separate from his domicile, and at the same time. (28 C.J.S. 'Domicile,' § 1, p. 1 et seq.; 16 Cal.Jur.2d 'Domicile,' §§ 2-3, pp. 647-649.) But statutes do not always make this distinction in the employment of those words. They frequently use 'residence' and 'resident' in the legal meaning of 'domicile' and 'domiciliary,' and at other times in the meaning of factual residence or in still other shades of meaning. (Rest., Conflict of Laws, § 9, com. e; 17 Am.Jur. 'Domicile,' § 9, p. 593.) For example, in our codes 'residence' is used as synonymous with domicile in the following statutes: sections 243 and 244 of the Government Code, giving the basic rules generally regarded as applicable to domicile."

Since wife, as a citizen of Australia who has been absent from the State of California for many months, cannot claim and does not claim to be a resident for purposes of dissolution, she invokes the jurisdiction of the court based on her husband's residence in California.

Husband denies that he is a domiciliary of California, although he resides here. He denies having formed the intention to become a domiciliary, and that as a military person his presence here is under compulsion.

One in military service retains the domicile or residence in the state from which he entered the service, and may institute a divorce action there until he establishes a new residence or domicile. (See generally, Annot. (1952) 21 A.L.R.2d 1163-1186.)

It has long been recognized that presence at a military station, without more, cannot make that station the serviceman's domicile, because the serviceman is subject to the orders of his superior officer. However, a member of the armed services can become a domiciliary or resident, for divorce purposes, of the jurisdiction in which he is stationed, if he has the requisite intent to do so. (*Stifel* v. *Hopkins* (6th Cir. 1973) 477 F.2d 1116, 1122.)

A distinction has been noted between enlisted men and officers concerning legal compulsion affecting acquisition of domicile at the place of military residence. (Leflar, American Conflicts Law (3d ed. 1977) § 10, pp. 18-19.) "The rule is probably the same for soldiers in barracks, but not for officers or others who have freedom to select their place of residence, even within a restricted area. Members of the armed forces who have this freedom of choice as to where they may live should

be judged as to their domiciles like anyone else. The fact that they may be reassigned to new posts at a future time without their own consent does not prevent them from having the state of mind of regarding their present residences as their true homes. For most purposes of the law these homes are their preeminent headquarters, and ought to be accepted as such. Otherwise the domicile concept will be an artificial and mechanical one as applied to them." (Fns. omitted.)

Several states have statutes which provide that a military person who has been continuously stationed in the state for a particular period (often one year) shall be deemed a resident in good faith for purposes of a divorce action or which provide that, for divorce purposes, such persons are deemed to be residents of the state in which the base is located. The effect of the statutes is usually to permit a resident serviceman to obtain a divorce in the state even though he is not considered a legal domiciliary. (See generally, Annot. (1976) 73 A.L.R.3d 431-453.) California is not one of these states.[2]

In sum, an individual may become a resident (meaning domiciliary) of California for purpose of dissolution notwithstanding membership in the armed forces. The combination of actual presence and intention is required. The key in determining domicile is establishing the requisite intent. Thus it becomes necessary to inquire into husband's express or implied intent in order to determine where he was domiciled at the time of these proceedings.

As noted above, husband did not meet the jurisdictional requirements of the State of Florida for purposes of divorce when he obtained the divorce there. ■ Furthermore, he cannot be considered a domiciliary of Florida. His intention to reside in Florida was that he desired to make Florida his permanent home *at a time in the future*. It is not enough that a person desires to acquire or keep a legal domicile. Intent alone is insufficient. (*Aldabe* v. *Aldabe, supra*, 209 Cal.App.2d 453, 466; *Johnson* v. *Johnson, supra*, 245 Cal.App.2d 40, 45.)

■ In support of her claim that husband is a domiciliary of California, wife relies primarily upon the joint residence of the parties in their Atwater, California, home and also on husband's continued residence after their separation. However, merely purchasing a home near a military base, by a serviceman, is not sufficient to demonstrate intent

[2]States having these statutes include Alaska, Colorado, Connecticut, Georgia, Kansas, New Mexico, North Carolina, Rhode Island, Texas, and Washington.

to acquire a domicile if contradicted by other substantial evidence of intent. (*Johnson, supra,* 245 Cal.App.2d at pp. 44-45.) While it is true that husband paid property, sales, and gas taxes in California, husband presented significant evidence that he did not consider himself to be a domiciliary of California. Husband declared that he voted by absentee ballot in 1976 in the State of Florida. Voting registration is one of the important acts to be considered in determining domicile. (*Johnson, supra,* at p. 44.) In addition, he registered his vehicle as a military nonresident of California and did not pay California state income taxes. Furthermore, husband consistently declared his intention to be a domiciliary of Florida. Wife failed to contradict this evidence.

█ In an action for dissolution of a marriage, the burden of proving "residence" is on the party alleging it. (*Catsiftes* v. *Catsiftes* (1938) 29 Cal.App.2d 207, 210 [84 P.2d 258].) █ Wife, as the person who instituted the divorce action and who alleges husband is a domiciliary of California for purposes of dissolution, has this burden of proof. Wife has failed to meet this burden. On the evidence presented, husband cannot be considered a domiciliary of California. However, for the reasons discussed below, we hold that wife's petition for dissolution should not have been dismissed.[3]

Wife contends that "a modern trend is discernible to the effect that a state is not precluded from exercising jurisdiction over the marriage if either spouse has such other relationship to the state as would make it reasonable for that state to dissolve the marriage." Wife cites to the judicial comment to Code of Civil Procedure section 410.10 and also to the Restatement Second of Conflict of Laws, section 72. This section provides: "A state has power to exercise judicial jurisdiction to dissolve the marriage of spouses, neither of whom is domiciled in the state, if either spouse has such a relationship to the state as would make it reasonable for the state to dissolve the marriage."

The comment to this Restatement section provides some illuminating insights into this area: "A state may have a sufficient interest in a spouse by reason of some relationship other than domicil, to give the state judicial jurisdiction to dissolve the marriage. In the present state

---

[3]As we have concluded that husband cannot be considered a domiciliary of either Florida or California, the traditional rules of domicile must apply. One in the military service retains the domicile from which he entered the service until he establishes a new domicile. Husband in the instant case entered the service from the State of Mississippi, his domicile of origin. Thus, at the time of these proceedings husband must be considered a domiciliary of the State of Mississippi.

of the authorities, few definite statements can be made as to what relationships with a state, other than domicil, will suffice. Residence, as distinguished from domicil, by one of the spouses in the state for a substantial period, such as a year, is an adequate jurisdictional basis for the rendition of a divorce. On the other hand, the fact that the spouses were married in the state should not of itself provide an adequate jurisdictional basis. A distinction may ultimately be drawn between situations where both spouses are subject to the personal jurisdiction of the divorce court and where there is jurisdiction over only one spouse. One or more jurisdictional bases may be found adequate for the granting of a divorce in the first situation and inadequate in the second." (Rest.2d Conflict of Laws, § 72, com. b, p. 220.)

Wife also relies on *Whealton v. Whealton, supra,* 67 Cal.2d 656. After stating that the statutory terms "residence" and "domicile" are synonymous for purposes of Civil Code section 128 (now Civ. Code, § 4530, subd. (a)), the court in *Whealton* cites to a rather lengthy footnote. This footnote states in pertinent part: "A majority of the states use length of residence as a basis for jurisdiction. *Equating domicile with residence should be unnecessary to fulfill due process requirements.* A reasonable length-of-residence test alone would obviate the necessity for an often spurious inquiry into intent and would demonstrate as clearly as domicile that the forum state has an interest in adjudicating the marital status. [Citations.]" (*Id.,* at p. 660, fn. 2, italics added.)

Another authority has stated: "It is evident the courts and legislatures are seeking some broader basis than domicile to sustain divorce jurisdiction. Most of them have stuck with the in rem concept, basing it on residence (even if only six weeks or ninety days) instead of domicile. Others using a less artificial approach say that the state interest, as distinguished from the purely individual interests of the spouses, in every marital status, requires that divorce suits be maintained only in a state having that interest in a particular marriage. The state's interest is correlated with residence, if not with domicile, in the state, or with some other factual contact with the status.

"Another basis for divorce jurisdiction, not yet generally accepted, puts less weight on the state's interest in the status. It would treat the marital relationship as giving rise primarily to private interests, as do most other relationships that are regulated by the law. Under this approach, a court's in personam jurisdiction over both spouses would en-

able it to dissolve their marriage conclusively, regardless of domicile or residence." (Leflar, American Conflicts Law, *supra*, § 223, p. 455.)

Notwithstanding the apparent trends in the law as discussed above, we are not prepared to hold that in all circumstances mere residence, rather than domicile, is all that is necessary for divorce jurisdiction in California. Neither are we prepared to hold that personal jurisdiction is all that is required. As previously noted, California's divorce jurisdiction statute (Civ. Code, § 4530, subd. (a)) provides for a residency requirement and the term "residence" has been held to be synonymous with "domicile." (*Whealton v. Whealton, supra*, 67 Cal.2d 656, 660.) However, we note that equating "residence" with "domicile" makes more sense applied to a situation where a California *domiciliary* is temporarily *residing out of state* and seeks to utilize the California courts to obtain a divorce, a situation unlike the case at bar. (See *Johnson v. Johnson, supra*, 245 Cal.App.2d 40.) Public policy dictates that the California domiciliary not be denied access to our divorce courts merely because he or she is temporarily out of the state. On the other hand, in the instant action, husband, through carefully planned declarations and actions, technically may not be considered a domiciliary of California. It is undisputed, however, that during the instant dispute husband was residing in the family home in Atwater, California, and was working in the area as well. Clearly husband was a resident, though not a domiciliary, of California during these proceedings. (See Gov. Code, § 244.)

Public policy would not be served if we were to prevent wife in the instant case, who lives in Australia, from utilizing our divorce statute. While husband is not a technical domiciliary of California, he is indeed a resident. Personal jurisdiction can be obtained over both spouses in the instant action—over the wife by the filing of her action, over husband by his presence and substantial contacts with the State of California. Indeed, if we were to deny wife access to our courts, she would be severely limited in where she should go to obtain her divorce. She could utilize the courts of Australia, a country where the parties never maintained a marital or family residence, a country where the parties own no property. Or wife could utilize the courts of Mississippi, but *only* if Mississippi requires domicile only and not actual residency in its divorce jurisdiction statute. Furthermore, the State of Mississippi has little state interest in the marital status of the parties in the instant case. While husband and wife were married in Mississippi, they left the state shortly thereafter and did not return. Husband has declared his in-

tention of not returning to Mississippi. On the other hand, California does maintain an interest in the marital status of the parties. The last marital home was in California. The parties own property in California. And husband is, in fact, a resident, though not a domiciliary, of California.

We hold that under the unique circumstances of the instant case, husband's status as a resident of California *and* the unavailability of a more proper forum provide a sufficient basis to satisfy the jurisdictional requirements of Civil Code section 4530, subdivision (a). Denial of access to our courts under these circumstances is inequitable and unnecessary.

The judgment is reversed.

Franson, Acting P. J., and Zenovich, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied November 24, 1982. Newman, J., did not participate therein.