FREE *v.* BLAND.

No. 205.   Argued March 21, 1962.—
Decided May 21, 1962.

*W. Graham Claytor, Jr.* argued the cause for petitioner. With him on the briefs were *Peter S. Craig, Edwin M. Fulton, Hollie G. McClain* and *Gerhard A. Gesell.*

*Olin P. McWhirter* argued the cause for respondent. With him on the briefs was *Royal H. Brin, Jr.*

*Solicitor General Cox, Assistant Attorney General Orrick* and *Morton Hollander* filed briefs for the United States, as *amicus curiae,* urging reversal.

Mr. Chief Justice Warren delivered the opinion of the Court.

We are called upon to determine whether the Treasury Regulations creating a right of survivorship in United States Savings Bonds pre-empt any inconsistent Texas community property law by virtue of the Supremacy Clause, Article VI, Clause 2, of the Constitution.

The petitioner is the widower of Mrs. Mary Ida Free, and the respondent is her son by a previous marriage. Mr. and Mrs. Free were domiciled in Texas. That State follows the community property system; except in certain instances not here material, all property acquired by either spouse during marriage belongs to the community of the husband and wife.[1] Property purchased with community property retains a community character. See *Love* v. *Robertson,* 7 Tex. 6. Although each spouse owns an undivided one-half interest in the community property, the husband is the sole authorized manager.[2] During the years 1941 to 1945, petitioner Free, using community property, purchased several United States Savings Bonds, series "E" and "F." The bonds were all issued to "Mr. *or* Mrs." Free. Under the Treasury Regulations promulgated under 31 U. S. C. § 757c (a) which govern bonds issued in that form, when either co-owner

---

[1] Vernon's Tex. Civ. Stat., Art. 4619. See Tex. Const., Art. XVI, § 15; Vernon's Tex. Civ. Stat., Arts. 4613–4627. Property acquired by gift, devise or descent is separate property. Vernon's Tex. Civ. Stat., Arts. 4613–4614. Also, community property partitioned in the manner provided in Vernon's Tex. Civ. Stat., Art. 4624a, becomes separate property. See generally Huie, Commentary on the Community Property Laws of Texas, 13 Vernon's Tex. Civ. Stat. 1.

[2] Vernon's Tex. Civ. Stat., Art. 4619. See Huie, *supra,* note 1, at 39. The wife may have managerial power over the "special" community comprised of her income and the income from her separate property. See *Bearden* v. *Knight,* 149 Tex. 108, 228 S. W. 2d 837. Blevins, Recent Statutory Changes in the Wife's Managerial Powers, 38 Tex. L. Rev. 55.

dies, "the survivor will be recognized as the sole and absolute owner." 31 CFR § 315.61. After Mrs. Free passed away in 1958, this controversy arose between the husband, who claimed exclusive ownership by operation of the Treasury Regulations, and the son, who, as the principal beneficiary under his mother's will, claimed an interest in the bonds by virtue of the state community property laws. Respondent son demanded either one-half of the bonds or reimbursement for the loss of Mrs. Free's community half interest in the bonds which was converted into petitioner's separate property by operation of the federal regulations.

In order to resolve the controversy, petitioner Free filed suit in the District Court of Upshur County, Texas, against the respondent individually and as the executor of Mrs. Free's estate. Respondent Bland filed a counterclaim. On the petitioner's motion for summary judgment, the trial court awarded full title to the bonds to the petitioner by virtue of the federal regulations but awarded reimbursement to the respondent by virtue of the state community property laws, making the bonds security for payment. The petitioner appealed to the Court of Civil Appeals. That court affirmed the trial court's award of full title to the petitioner but reversed the award of reimbursement to the respondent,[3] relying upon *Smith* v. *Ricks,* 159 Tex. 280, 318 S. W. 2d 439, in which unconditional effect was given to the survivorship provisions of the federal regulations governing savings bonds.

While respondent's writ of error was pending in the Supreme Court of Texas, that court overruled the *Ricks* case in *Hilley* v. *Hilley,* 161 Tex. 569, 342 S. W. 2d 565. After holding that married couples in Texas would not be permitted to agree to any survivorship provision with

---

[3] 337 S. W. 2d 805 (Tex. Civ. App.).

regard to community property, the court dismissed the argument that the Supremacy Clause would compel recognition of the survivorship provisions in United States Savings Bonds with:

> "It is clear that the Federal regulations do not override our local laws in matters of purely private ownership where the interests of the United States are not involved. Bank of America National Trust & Savings Ass'n v. Parnell, 352 U. S. 29." 161 Tex., at 577, 342 S. W. 2d, at 570.

Subsequently, respondent Bland's writ of error was granted, and the Supreme Court of Texas, acting under the authority of the *Hilley* case, reversed the Court of Civil Appeals and reinstated the judgment of the trial court in a *per curiam* opinion. *Bland* v. *Free,* 162 Tex. 72, 344 S. W. 2d 435. We granted certiorari. 368 U. S. 811.

The Supreme Court of Texas' interpretation of the Supremacy Clause is not in accord with controlling doctrine. The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail. Article VI, Clause 2. This principle was made clear by Chief Justice Marshall when he stated for the Court that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield. *Gibbons* v. *Ogden,* 9 Wheat. 1, 210–211. See *Franklin National Bank* v. *New York,* 347 U. S. 373; *Wissner* v. *Wissner,* 338 U. S. 655; *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173. Thus our inquiry is directed toward whether there is a valid federal law, and if so, whether there is a conflict with state law.

Article I, Section 8, Clause 2 of the Constitution delegates to the Federal Government the power "[t]o borrow

money on the credit of the United States." Pursuant to this grant of power, the Congress authorized the Secretary of the Treasury, with the approval of the President, to issue savings bonds in such form and under such conditions as he may from time to time prescribe, subject to certain limitations not here material. 31 U. S. C. § 757c (a).[4] Cf. *United States* v. *Sacks,* 257 U. S. 37. Exercising that authority, the Secretary of the Treasury issued savings bonds under regulations which provided, *inter alia,* that the co-owner of a savings bond issued in the "or" form who survives the other co-owner "will be recognized as the sole and absolute owner" of the bond, 31 CFR § 315.61,[5] and that "[n]o judicial determination will be recognized which would . . . defeat or impair the rights of survivorship conferred by these regulations," 31 CFR § 315.20.[6] The Treasury has consistently main-

---

[4] "The Secretary of the Treasury, with the approval of the President, is authorized to issue, from time to time, through the Postal Service or otherwise, United States savings bonds and United States Treasury savings certificates, the proceeds of which shall be available to meet any public expenditures authorized by law, and to retire any outstanding obligations of the United States bearing interest or issued on a discount basis. The various issues and series of the savings bonds and the savings certificates shall be in such forms, shall be offered in such amounts, subject to the limitation imposed by section 757b of this title, and shall be issued in such manner and subject to such terms and conditions consistent with subsections (b)–(d) of this section, and including any restrictions on their transfer, as the Secretary of the Treasury may from time to time prescribe."

[5] "If either coowner dies without the bond having been presented and surrendered for payment or authorized reissue, the survivor will be recognized as the sole and absolute owner. Thereafter, payment or reissue will be made as though the bond were registered in the name of the survivor alone . . . ."

[6] "No judicial determination will be recognized which would give effect to an attempted voluntary transfer inter vivos of a bond or would defeat or impair the rights of survivorship conferred by these

tained that the purpose of these regulations is to establish the right of survivorship regardless of local state law,[7] and a majority of the States which have considered the problem have recognized this right.[8] The respondent, however, contends that the purpose of the regulations is simply to provide a convenient method of payment.[9] This argument depends primarily on the distinction between stating that the surviving co-owner will "be recognized as" the sole owner and stating that the surviving co-owner will "be" the sole owner. This distinction is insubstantial. The clear purpose of the regulations is to confer the right of survivorship on the surviving co-owner. Thus, the survivorship provision is a federal law [10] which must prevail if it conflicts with state law. See *Wissner* v. *Wissner,* 338 U. S. 655.

regulations upon a surviving coowner or beneficiary, and all other provisions of this subpart are subject to this restriction. Otherwise, a claim against an owner or coowner of a savings bond and conflicting claims as to ownership of, or interest in, such bond as between coowners or between the registered owner and beneficiary will be recognized, when established by valid judicial proceedings, upon presentation and surrender of the bond, but only as specifically provided in this subpart."

[7] See, *e. g.,* Statement of Treasury Department on Rights of Surviving Coowners and Beneficiaries of Savings Bonds, dated July 5, 1945, and fifth revision, dated October 1, 1958; Letter from the Acting Assistant General Counsel of the Treasury to the Attorney General of Missouri, June 9, 1941; Treasury Department Circular No. 530, 1935.

[8] See, *e. g., Lee* v. *Anderson,* 70 Ariz. 208, 218 P. 2d 732; *Stephens* v. *First National Bank of Nevada,* 65 Nev. 352, 196 P. 2d 756.

[9] See, *e. g., Decker* v. *Fowler,* 199 Wash. 549, 92 P. 2d 254. In this case the Government participated as *amicus curiae* in support of an application for rehearing, urging that the court had erroneously construed the regulations.

[10] *Leslie Miller, Inc.,* v. *Arkansas,* 352 U. S. 187; *Standard Oil Co.* v. *Johnson,* 316 U. S. 481; *United States* v. *Sacks,* 257 U. S. 37; *United States* v. *Birdsall,* 233 U. S. 223.

The success of the management of the national debt depends to a significant measure upon the success of the sales of the savings bonds. The Treasury is authorized to make the bonds attractive to savers and investors.[11] One of the inducements selected by the Treasury is the survivorship provision, a convenient method of avoiding complicated probate proceedings. Notwithstanding this provision, the State awarded full title to the co-owner but required him to account for half of the value of the bonds to the decedent's estate. Viewed realistically, the State has rendered the award of title meaningless. Making the bonds security for the payment confirms the accuracy of this view. If the State can frustrate the parties' attempt to use the bonds' survivorship provision through the simple expedient of requiring the survivor to reimburse the estate of the deceased co-owner as a matter of law, the State has interfered directly with a legitimate exercise of the power of the Federal Government to borrow money.

*Bank of America Trust & Savings Assn.* v. *Parnell,* 352 U. S. 29, relied upon by the court below, does not support the result reached. The Court in that case held that, in the absence of any federal law, the application of state law to determine the liability of a converter of Federal Home Owners' Loan Corporation bonds was permissible, because the litigation between the two private parties there did not intrude upon the rights and the duties of the United States, the effect on the only possible interest of the United States—the floating of securities—being too speculative to justify the application of a federal rule. That doctrine clearly does not apply when the State fails to give effect to a term or condition under which a federal bond is issued, as the Court there noted. "Federal law of course governs the interpretation of the nature of the

[11] 31 U. S. C. § 757c (a). See note 4, *supra.*

rights and obligations created by the Government bonds themselves." 352 U. S., at 34.

We hold, therefore, that the state law which prohibits a married couple from taking advantage of the survivorship provisions of United States Savings Bonds merely because the purchase price is paid out of community property must fall under the Supremacy Clause.

Our holding is supported by *Wissner* v. *Wissner,* 338 U. S. 655. There the Congress made clear its intent to allow a serviceman to select the beneficiary of his own government life insurance policy regardless of state law, even when it was likely that the husband intended to deprive his wife of a right to share in his life insurance proceeds, a right guaranteed by state law. But the regulations governing savings bonds do not go that far. While affording purchasers of bonds the opportunity to choose a survivorship provision which must be recognized by the States, the regulations neither insulate the purchasers from all claims regarding ownership nor immunize the bonds from execution in satisfaction of a judgment.[12] The Solicitor General, appearing as *amicus curiae,* acknowledges that there is an exception implicit in the savings bond regulations, including the survivorship provision, so that federal bonds will not be a "sanctuary for a wrongdoer's gains." [13] With this, we agree. The regulations are not intended to be a shield for fraud, and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property. However, the doctrine of fraud applicable under federal

[12] 31 CFR §§ 315.20–315.23. See note 6, *supra.*

[13] Brief for the United States as *amicus curiae,* p. 21. See also *id.,* pp. 26–28.

law [14] in such a case must be determined on another day, for this issue is not presently here. On the record before us, no issue of fraud was or could properly have been decided by the court below on summary judgment. There was no direct allegation of fraud in the counterclaim. Other allegations which in some circumstances might have a bearing on the subject were controverted and therefore can only be resolved by a trial on the merits. Accordingly, the judgment is reversed and the case is remanded for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE FRANKFURTER took no part in the decision of this case.

MR. JUSTICE WHITE took no part in the consideration or decision of this case.

---

[14] See, *e. g., Holmberg* v. *Armbrecht,* 327 U. S. 392; *Clearfield Trust Co.* v. *United States,* 318 U. S. 363.