303 So.2d 315 (1974)
Succession of Keete B. STOTHART.
No. 12450.
Court of Appeal of Louisiana, Second Circuit.
November 7, 1974.
Bethard & Bethard by Henry W. Bethard, III, Coushatta, for plaintiff in rule *316 and appellantLamar Hogsett, Administrator.
Brittain & Williams by Jack O. Brittain, Natchitoches, for defendant in rule and appelleeDon Mike Stothart.
Before BOLIN, PRICE and HALL, JJ.
HALL, Judge.
This appeal involves adverse claims in respect to United States Savings Bonds owned by the decedent Keete B. Stothart, at the time of his death on June 9, 1972.
Decedent left a last will and testament which he executed April 24, 1972, revoking all previous wills and testaments. The will contained several particular bequests and a statement that the testator confirms that there are two United States Savings Bonds, one payable to Rex Stothart and one payable to Hazel Stothart, said bonds being payable on death and each having a face value of $500. The will further directs that all of the other assets of which the testator dies possessed "such as cash, bonds, savings certificates or otherwise" shall be converted to cash and distributed one-third to Don Mike Stothart (decedent's son) and one-third each to Patrice Hogsett and Claire Hogsett (decedent's nieces).
The inventory of decedent's estate shows that among his assets were twenty-five United States Savings Bonds, twenty-three of which were issued to Keete B. Stothart, payable on death to Don Mike Stothart, and two of which were issued to Keete B. Stothart, payable on death to Mrs. Hazel Stothart and H. Rex Stothart.
The proceeding giving rise to this appeal was initiated by Lamar Hogsett as administrator of the estates of his minor children, Patrice Hogsett and Claire Hogsett, seeking to require the executor of the decedent's estate to convert the twenty-three bonds payable on death to Don Mike Stothart referred to above to cash and distribute two-thirds of the value thereof to the nieces named as legatees in the will. Alternatively, in the event the executor could not be required to convert the bonds to cash because of the manner in which they are payable, then petitioner sought judgment against Don Mike Stothart for an amount equal to two-thirds of the value of the bonds.
Don Mike Stothart answered the petition, asserting his full and complete ownership of the bonds as the designated payable on death beneficiary thereof under federal law and regulations. He further contended the testator never intended for these bonds to become part of the assets to be distributed to the residuary legatees.
After trial of the matter, the district court held Don Mike Stothart to be the owner of and entitled to immediate possession of the bonds, relying on Succession of Videau, 197 So.2d 655 (La.App. 4th Cir. 1967) writ refused 250 La. 920, 199 So.2d 922. The district court held that the beneficiary of a bond payable on death of the purchaser of the bond is the sole and absolute owner of the bond entitled to possession without the necessity of judicial proceedings and further held that payable on death bonds are an additional method of making donations mortis causa superimposed by federal regulaitons upon Louisiana law relative to donations. From judgment rendered accordingly, Hogsett appealed. We affirm the judgment of the district court.
On appeal, appellant contends it was clearly the intent of the testator that the subject bonds be part of the residuary estate to be distributed, particularly in view of the testator's confirmation in the will of only two of his bonds payable on death to others and particularly because the residuary clause refers to bonds as part of the assets to be distributed under that clause. Appellant further contends that such bequest, together with the clause in the will revoking all prior testaments, operated as a revocation of the previous donation mortis causa accomplished through the medium of payable on death savings bonds, relying *317 particularly on Winsberg v. Winsberg, 220 La. 398, 56 So.2d 730 (1952).
Appellee contends it was not the testator's intent that these bonds be included in the residuary bequest and that, in any event, under federal law and regulations and under the Louisiana and federal cases dealing with the subject, a payable on death beneficiary named in a United States Savings Bond is entitled to ownership and possession of the bond without accountability to anyone except where the rights of forced heirs or community property rights have been violated, which is not the case here. Appellee cites particularly Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L. Ed.2d 180 (1962); Yiatchos v. Yiatchos, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964); Succession of Guerre, 197 So.2d 738 (La.App. 4th Cir. 1967) writ refused, 250 La. 933, 199 So.2d 926 and Succession of Videau, supra.
Some parol evidence was introduced by both sides in an effort to show the testator's true subjective intent in regard to these particular bonds. The parol testimony is not convincing in either direction and is neither helpful nor appropriate in seeking the intent of the testator in this instance. The language of the will itself is perfectly clear. After making several particular bequests and confirming two savings bonds in favor of the named payable on death beneficiaries, the will directs that all other assets, including bonds, be converted to cash and distributed to the three legatees, one-third each. When the will speaks of all other assets including bonds, it necessarily encompasses the bonds in dispute here. Under LSA-C.C. Art. 1712, it is not appropriate to depart from the proper and plain terms of the testament to seek the intention of the testator.
In support of his argument that the subsequently executed will revoked the payable on death designation in the bonds, appellant relies on Winsberg v. Winsberg, in which the court held the subsequent birth of a child had the effect of revoking such a beneficiary designation.
In Winsberg, the decedent purchased United States Savings Bonds and designated his brother as payee on death. Subsequently a child was born to the deceased. After decedent's death, the brother took possession of the bonds and suit was filed on behalf of the child demanding that the brother deliver the bonds or, in the alternative, that a money judgment be rendered against the brother for the cash value of the bonds.
The court recognized that the designation by a purchaser of savings bonds of a beneficiary to whom the bonds become payable on the purchaser's death constitutes a donation mortis causa. The savings bond plan establishes an additional method of disposing of property mortis causa which has been superimposed by federal law, and Louisiana is without right to change the beneficiary of the contract or to insist that the federal government recognize someone other than the payee as the owner of the bonds. The court stated that regulations of the treasury department for the payment of savings bonds were designed solely to facilitate the government and were not designed to interfere with the laws of descent and distribution of the various states. The provisions of state law pertaining to testamentary dispositions, except those dealing with form, should be applied in determining rights and liabilities in these instances.
The court went on to apply LSA-C.C. Art. 1705 which provides that a testament falls by the birth of legitimate children of the testator posterior to the date of the testament, and held that the birth of the child after the date of issuance of the bonds constituted a revocation of the donation mortis causa accomplished by the issuance of a savings bond with a payable on death beneficiary. The court held that while Louisiana may not require the bonds be paid to anyone other than the named beneficiary, it has the power to decree that the *318 beneficiary or payee is indebted to the estate of the former owner or his heir in an amount equal to the value of the gift. The judgment of the lower court dismissing the child's demands was reversed and the case remanded for further proceedings in accordance with the opinion.
Free v. Bland was decided by the United States Supreme Court in 1962, several years after the decision of the Louisiana Supreme Court in Winsberg. Free makes it clear that the purpose of the federal regulations concerning ownership and payment of savings bonds is more than to simply provide a convenient method of payment, the purpose being to confer the right of ownership on the designated person. In reversing a decision of the state court requiring the survivor co-owner of bonds to account to the estate of the deceased, the Supreme Court held that the requirement of reimbursement to the estate interfered directly with the legitimate exercise of the power of the federal government to borrow money and that state law must yield to federal law under the Supremacy Clause of the Constitution.
Free, and also the later case of Yiatchos, recognized that federal law is not to be used as a shield for fraud or to prevent relief where the circumstances manifest fraud or a breach of trust. The Yiatchos case recognized that a wife would have a claim against a payable on death beneficiary on bonds where the facts show constructive fraud of her community property rights.
Particularly pertinent to the instant case is the holding in Yiatchos relative to the decedent husband's one-half interest in the bonds as to which there was no claim of fraud or deprivation of community property rights. The bonds in question were issued in the name of the decedent, payable on death to his brother. Decedent's will left the residue of his estate to several legatees. The state court held that decedent's one-half interest in the bonds, about which there was no issue of fraud, passed to the legatees under the will rather than by virtue of the bonds and the federal regulation. The United States Supreme Court reversed and declared the brother to be entitled to this one-half interest as payee on death, holding:
"Thus, the holding of the court below, which requires that the bonds be disposed of by will or by state intestacy provisions, is nothing more than a state prohibition against utilizing savings bonds to transmit property at death, and is, for reasons stated above, forbidden by Free v. Bland, supra."
Succession of Guerre and Succession of Videau recognize the right of designated co-owners or payable on death beneficiaries of United States Savings Bonds to absolute ownership and immediate possession of the bonds, but also recognize the right of forced heirs to sue the payee of such bonds for a reduction of excessive donations where the legitime is infringed upon.
There is no issue of fraud or breach of trust and no issue of deprivation of community property rights or forced heirship rights in the instant case. The issue in the instant case relates more to the form or manner of transmitting property upon death. All of the cited cases, except possibly Winsberg, acknowledge the supremacy of federal law insofar as the transmission of property by use of United States Savings Bonds is concerned. Winsberg might not be decided the same way today in view of the holding of the United States Supreme Court in Free, particularly insofar as it required the payee to account for the full value of the bond rather than just the child's forced portion.
We hold that the subsequent execution of a will purporting to leave all of the remaining assets of the testator to certain named legatees did not have the effect of revoking or otherwise affecting the status of a United States Savings Bond payable on death to a named beneficiary. The *319 named beneficiary, and not the legatees under the decedent's will, under federal law and regulations as interpreted by federal and state decisions, is entitled to ownership and possession of the bonds, without accountability to the legatees.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.