[No. B044758. Second Dist., Div. One. Apr. 3, 1991.]

SEA CASTLE APARTMENTS, LTD., Plaintiff, Cross-defendant and Appellant, v.
SANTA MONICA RENT CONTROL BOARD, Defendant, Cross-complainant and Appellant.

**[Opinion certified for partial publication.\*]**

* Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication. The portion to be published follows.

## COUNSEL

Shell & Campbell, David M. Shell and Diane S. Campbell for Plaintiff, Cross-defendant and Appellant.

Anthony A. Trendacosta and Gilbert H. Friedman for Defendant, Cross-complainant and Appellant.

## OPINION

**DEVICH, J.**—Plaintiff and cross-defendant Sea Castle Apartments, Ltd. (Sea Castle), and defendant and cross-complainant Santa Monica Rent Control Board (Board) each appeal from a judgment entered following an order granting Board's motion for summary judgment. In the published portion of this opinion, we determine that, where the maximum allowable rental rates established by local ordinance have been preempted by the United States Department of Housing and Urban Development (HUD) on the basis the property involved is financed with a mortgage insured by HUD, the rates revert to those established by local ordinance upon extinguishment of the HUD-insured mortgage.

## Background

This case involves a 178-unit residential apartment complex in Santa Monica, California, built around 1925 (the property). The property was rehabilitated in 1973, utilizing a loan insured by HUD. From 1976 through 1980, HUD managed the property as the mortgagee in possession.

In April 1979, the City of Santa Monica adopted city charter article XVIII (Rent Control Law), which established a comprehensive system of rent control. Under the provisions of Rent Control Law, all rents were rolled back to their April 1978 levels, but annual general adjustments and individual rent increases were permitted where warranted by the circumstances.

In December 1980, Monica Apartments Investment Company (Monica) purchased and took possession of the property. On July 20, 1981, Monica sought an individual rent increase by filing petition No. I-0528 with Board. On October 1, 1981, Board approved the petition in part, and ordered that the maximum allowable rents on the property be increased to a yield of $519,954 per annum.

Thereafter, pursuant to HUD regulations, Monica requested that HUD preempt the rates Board had authorized in petition No. I-0528.[1] In October 1981, the request was granted, and HUD set rental rates at a maximum annual yield of $579,191.

On March 7, 1983, Monica filed a petition for rent increase with Board (No. I-0669), seeking rental increases greater than those granted by HUD in 1981. On April 7, 1983, Board permitted rents to be raised to an annual yield of $604,848.

Monica again requested that HUD preempt Board's decision. In August 1983, the request was granted, and HUD set rental rates at a maximum annual yield of $743,212.[2]

---

[1] Federal regulations authorize HUD to preempt rental rates established by a local rent control board on unsubsidized HUD-insured projects upon a determination that such rates will not produce a level of income sufficient to meet the financial obligations of the mortgage. (24 C.F.R. § 246.5 et seq.)

[2] Following HUD's 1981 preemption determination, Board and others filed an action in federal district court alleging that certain HUD procedures violated due process. Summary judgment was granted in favor of HUD. In a memorandum filed October 3, 1984, the Ninth Circuit Court of Appeals noted that, in the 1983 preemption process, HUD had complied with all of the procedures involved in the appeal from the 1981 preemption. Accordingly,

Following the preemption determination, Monica increased rents at the property to reflect the levels permitted by HUD. It subsequently imposed further rent increases on the property to conform with the general adjustments permitted by Board.

At various times in 1986, Monica made inquiry of Board regarding whether maximum allowable rental rates would be affected if the mortgage on the property were refinanced with a conventional lender, thereby extinguishing the HUD-insured mortgage. Board did not render an opinion in response to Monica's inquiries.

In December 1986, Monica refinanced the property, thereby extinguishing the HUD-insured mortgage and terminating all federal involvement with the property. In March 1987, Monica informed Board of the refinancing. The following May, Board advised Monica of its position that, upon termination of HUD involvement, petition No. I-0669 controlled the rental rates on the property. Monica informed Board of its position that the 1983 HUD preemption controlled the rental rates.

The parties agreed to resolve their dispute through an action for declaratory relief to be filed by Monica. On October 2, 1987, Monica sold the property to Sea Castle.

On October 30, 1987, Sea Castle filed a complaint for declaratory and injunctive relief, seeking a "judicial determination [that] the 1983 HUD-determined rent levels, as increased by the annual rent increases permitted by [Board], are and have been the lawful rents at the [property]." Board subsequently cross-complained for declaratory and injunctive relief, seeking a "judicial declaration that . . . the maximum allowable rent levels on [the] property are and have been those established by [Board] in its decision in Petition for Rent Increase I-0669 on April 7, 1983, increased by any applicable subsequent general rent adjustments granted by [Board]."

On November 23, 1988, Board moved for summary judgment on the complaint and cross-complaint. The motion was granted.

On August 2, 1989, a judgment was filed granting declaratory relief and a permanent injunction. The judgment recites, in relevant part, that the maximum allowable rents for the property should be based on petition No. I-0669 rather than the 1983 HUD-preemption rate, and enjoins Sea Castle

---

Board's action was dismissed as moot. (*City of Santa Monica* v. *Pierce* (9th Cir. 1984) Dock. No. 83-6369 [nonpub. opn.].)

from demanding or receiving rents in excess of those based on petition No. I-0669.

DISCUSSION

Our task is to define the status quo; to determine what is left upon cessation of the conditions of preemption. Board contends the status quo is embodied in petition No. I-0669. Sea Castle contends the status quo is the HUD-preemption rate as it existed in December 1986 when the property was refinanced.

On appeal, Sea Castle asserts that petition No. I-0669 was "decided as part of the exhaustion requirements of federal jurisdiction, and . . . was never a vehicle to establish enforceable rent levels." We find absolutely no support for Sea Castle's position.

Federal regulations for HUD projects appear in 24 Code of Federal Regulations, sections 246.1 et seq. They are authorized by section 211 of the National Housing Act (12 U.S.C. § 1715b) and section 7(d) of the Department of Housing and Urban Development Act (42 U.S.C. § 3535(d)). The United States Constitution, article VI, clause 2, establishes the supremacy of the HUD regulations over state and local laws. (See *Free* v. *Bland* (1962) 369 U.S. 663, 666, 668 [8 L.Ed.2d 180, 183-184, 82 S.Ct. 1089]; *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 655 [209 Cal.Rptr. 682, 693 P.2d 261].)

These regulations provide, inter alia, that HUD will "generally not interfere" with rents set by a local rent control board. (24 C.F.R. § 246.5.) An owner may seek HUD preemption only after "[filing] an application for whatever relief or redetermination is permitted under the [s]tate or local law" (24 C.F.R. § 246.6(a)) and informing HUD of the disposition of that request (24 C.F.R. § 246.9(a)(4)). Preemption will be granted only if it is determined that the rental rates permitted under local law "prevent[] the mortgagor from achieving a level of residential income necessary to maintain and operate adequately the project, which includes sufficient funds to meet the financial obligations under the mortgage." (24 C.F.R. § 246.5.)[3]

"Where, as here, an unsubsidized insured project is involved, an inconsistency between state and federal law will arise only upon a finding of jeopardy to HUD's economic interest. Absent such a finding, tenant

---

[3] The regulations are intended to operate only where state or local law "jeopardizes [HUD's] economic interest in a project. . . ." (24 C.F.R. § 246.1(a).)

protection under the local rent control laws is respected. The jeopardy determination involves a careful assessment of the mortgagor's financial position . . . . [Citation.] Thus tenant protection under the local rent control laws is not arbitrarily terminable by the federal government. [Citation.] Rather, it exists unless and until a determination is reached, after a [determination], that 'federal interests [are] sufficiently imperiled to invoke the principle of federal supremacy' [citation]." (*Gramercy Spire Tenants' Ass'n* v. *Harris* (S.D. N.Y. 1977) 446 F.Supp. 814, 826-827.)

In contrast to the HUD scheme, regulations promulgated under Rent Control Law declare an intent to set rental rates at a level which will provide owners with a fair return on their property. Rent Control Law presumes that owners were receiving a fair return on the rollback date, and allows adjustments for items such as increased taxes, management expenses, and repairs. However, mortgage interest and principal payments are specifically excluded from this calculation. (Santa Monica Rent Control Regs., ch. 4, § 4100 et seq.; see also *Baker* v. *City of Santa Monica* (1986) 181 Cal.App.3d 972, 988 [226 Cal.Rptr. 755], app. dism. (1987) 479 U.S. 1073 [94 L.Ed.2d 126, 107 S.Ct. 1265].)

HUD preemption and Rent Control Law are thus based on wholly separate economic concerns. HUD requires a local determination of maximum allowable rents as a prerequisite to HUD preemption; but only because of its general policy to "not interfere in the regulation of rents by a [local] rent control board." (24 C.F.R. § 246.5.) HUD will not exercise its preemption power unless it perceives a need to protect *itself*, not the owner of the mortgaged property. ▬ Because no aspect of HUD preemption acts to review, reverse, or permanently nullify the decision of a local rent control board, the HUD preemption rate is eliminated as a factor in the determination of rents once the basis of federal preemption has ceased to exist.

As Board aptly observes, petition No. I-0669 may be analogized to the stars, and HUD preemption to the sun. When the sun rises, the stars do not cease to exist; they simply cannot be seen. When the sun sets, the stars once again appear. Petition No. I-0669 has existed since March 1983. When federal involvement in the property terminated in December 1986 upon extinguishment of the HUD-insured mortgage, petition No. I-0669, like the stars, reappeared, and once again controlled the maximum allowable rental rates on the property.

▬ Sea Castle appears to further contend that Board's failure to seek judicial review of petition No. I-0669 in 1983, as it had previously done with petition No. I-0528 in 1981, constituted an "admi[ssion on Board's part]

that the [HUD preemption] decision established the legal rents at the property" which could not thereafter be altered. The contention is without merit.

No vehicle exists under state or federal law by which Board would be empowered to contest the rental rates set upon HUD preemption. Board's challenge to the 1981 preemption was based purely on procedural grounds. Although the nature of that challenge is not disclosed in the record on appeal, the opinion of the Ninth Circuit establishes that different procedures were followed with respect to the 1983 HUD preemption, thereby rendering the 1981 challenge moot. Sea Castle's assertion that the 1983 HUD preemption rates could survive the termination of federal involvement in the property thus finds no support in Board's "acceptance" of the 1983 HUD preemption.

The trial court properly found that the maximum allowable rental rates on the property were those established in petition No. I-0669.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .*

## DISPOSITION

The judgment is affirmed. The parties are to bear their own costs on appeal.

Spencer, P. J., and Vogel, J., concurred.

The petition of appellant Sea Castle Apartments, Ltd. for review by the Supreme Court was denied June 27, 1991.

---

*See footnote, *ante,* page 1540.