**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**STATE OF OHIO, Defendant–Appellant.**

No. 91–3289.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 19, 1991.

Decided Feb. 20, 1992.

As Amended Feb. 26, 1992.

Rehearing Denied April 3, 1992.

James E. Rattan, Asst. U.S. Atty., Office of the U.S. Atty., Columbus, Ohio and Joseph V. Jest (argued and briefed), U.S. Dept. of Justice, Federal Program Branch, Washington, D.C., for plaintiff-appellee.

Timothy J. Mangan (argued and briefed) Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendant-appellant.

Before KENNEDY and BOGGS, Circuit Judges, and EDGAR, District Judge.[*]

EDGAR, District Judge.

The district court entered a declaratory judgment that the "economic loss" requirement in Ohio's Victims of Crime Act, Ohio Rev.Code Ann. § 2743.52 (Anderson 1981 &

---

[*] The Honorable R. Allan Edgar, United States District Judge for the Eastern District of Tennes-

see, sitting by designation.

Supp.1990), conflicts with and is preempted by 38 U.S.C. § 1729.[1] The State of Ohio was ordered to pay the United States the reasonable cost of medical treatment provided to Ohio resident David F. Bernath ("Bernath") by the United States Department of Veterans Affairs. 756 F.Supp. 340. The State of Ohio appealed. We AFFIRM.

## I.

Bernath was the victim of a violent crime in Ohio. He received medical treatment at the Veterans Administration ("VA") hospital in Cleveland, as well as treatment at a private facility, Elyria Memorial Hospital. As a veteran, Bernath was not charged for the care that he received at the VA hospital. Bernath applied for benefits under Ohio's Victims of Crime Act, Ohio Rev. Code Ann. §§ 2743.51–.72 (Anderson 1981 & Supp.1990). The VA obtained an assignment from Bernath and submitted to the state a statement for $1,972.00 representing the reasonable cost of the medical care furnished by the VA to Bernath. The state awarded Bernath recovery for lost wages and medical costs he incurred at Elyria Memorial Hospital. However, because the state determined that Bernath had not suffered an "economic loss" as defined by Ohio Rev.Code Ann. § 2743.51(E) as a consequence of his treatment at the VA hospital, the VA was denied recovery.

In this suit brought by the United States, the district court via summary judgment awarded recovery of $1,972.00 to the United States under what is now 38 U.S.C. § 1729, holding that the "economic loss" provision of the Ohio statute conflicts with and is preempted by § 1729.

## II.

38 U.S.C. § 1729 provides in relevant part:

Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this subsection, the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Secretary) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States.

38 U.S.C. § 1729(a)(1).

Paragraph (1) [the above quoted paragraph] of this subsection applies to a non-service-connected disability—

. . . .

that is incurred as the result of a crime of personal violence that occurred in a State, or a political subdivision of a State, in which a person injured as the result of such a crime is entitled to receive health care and services at such State's or subdivision's expense for personal injuries suffered as the result of such crime[.]

38 U.S.C. § 1729(a)(2)(C).

[T]he United States shall be subrogated to any right or claim that the veteran (or the veteran's personal representative, successor, dependents, or survivors) may have against a third party.

38 U.S.C. § 1729(b)(1).

No law of any State or of any political subdivision of a State, and no provision of any contract or other agreement, shall operate to prevent recovery or collection by the United States under this section. . . .

38 U.S.C. § 1729(f).

The Ohio statute allows payment when the claimant has suffered "economic loss" which is defined as "economic detriment consisting only of allowable expense, work loss, funeral expense, unemployment benefits loss, and replacement services loss." Ohio Rev.Code Ann. § 2743.51(E) (Supp. 1990). Allowable expense includes "reasonable charges incurred for reasonably needed products, services, and accommodations, including those for medical care. . . ."

---

**1.** 38 U.S.C. § 1629 was renumbered to 38 U.S.C. § 1729 by amendment effective August 6, 1991.

Ohio Rev.Code Ann. § 2743.51(F) (Anderson 1981 & Supp.1990). The State of Ohio says that since Bernath was not required to pay for his treatment at the VA hospital, he incurred no "allowable expense," suffered no "economic loss," and therefore, no recovery may be had. Moreover, says the state, it is Bernath, the injured victim, which the Ohio statute is intended to recompense, not health care providers.

The difficulty with these arguments is that they fly in the face of Congress' intent in enacting 38 U.S.C. § 1729. This legislative history shows clearly that § 1729 was aimed precisely at state statutes such as Ohio's Victims of Crime Act which have the practical effect of preventing VA hospitals from recovering their costs in situations when a private hospital would be entitled to recover.

The House Report, which describes the enacted § 1729, states:

> Twenty-six States have statutes on compensating victims of crimes of personal violence; however, the Veterans' Administration has difficulty in collecting in nine States because (1) Federal hospitals are excluded as "other source of recovery"; (2) claims go directly to the victim and claims are not assignable; or (3) veterans are not required to pay for medical care received.
>
>   The reported bill would strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' nonservice-connected care from State workers' compensation, "no fault" auto insurance and crimes of personal violence where a veteran would have entitlement to payment or reimbursement by a third party for appropriate medical care furnished in a non-Federal hospital.

H.R.Rep. No. 97–79, 97th Cong., 1st Sess. 8 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1685, 1693.

We join the Fourth and Third Circuits which have held that Maryland and New Jersey statutes, similar to the Ohio statute, do not prevent recovery by the VA under § 1729 for the reasonable cost of medical care or services rendered to veterans.

*United States v. Maryland,* 914 F.2d 551 (4th Cir.1990); *United States v. New Jersey,* 831 F.2d 458 (3d Cir.1987).

The State of Ohio, and the dissent, focus on the language of § 1729(a)(1) which authorizes the United States to recover the reasonable cost of medical services "from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party if the care or services had not been furnished by a department or agency of the United States." The state says that the VA may not recover under this language because the state would not reimburse a crime victim/veteran who had been treated in a private hospital or other health care provider which did not charge for its services. As both the Third and Fourth Circuits have said, the problem with this argument is that it is "inconsistent with economic reality" and the legislative history of § 1729. *Maryland,* 914 F.2d at 555; *New Jersey,* 831 F.2d at 462. The economic reality is that private hospitals do not provide free medical treatment. Thus, the VA is, for all practical purposes, denied recovery under the state statute, while private hospitals are not. This is exactly what happened in this case. The State of Ohio paid Bernath for his expenses at Elyria Memorial, but not for his expenses at the VA hospital.

The legislative history is, as recited above, that Congress intended to prevent just the sort of thing that the Ohio statute attempts to do. "In determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990). Since the Ohio statute conflicts with § 1729, it must give way under the Supremacy Clause, Article VI, of the United States Constitution. *Free v. Bland,* 369 U.S. 663, 666, 82 S.Ct. 1089, 1092, 8 L.Ed.2d 180 (1962).

The dissent has raised the question of whether 38 U.S.C. § 1729 contravenes the Tenth Amendment by unreasonably in-

fringing upon powers reserved to the states. This issue was not raised in the district court. We decline to consider it pursuant to the general rule that, absent "exceptional cases or particular circumstances," a federal appellate court will not consider issues not passed on by the district court. *Pinney Dock and Transport Co. v. Penn Central Corp.*, 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). There is nothing about this case that would warrant an exception to the rule.

### III.

The United States is entitled to recover $1,972 from the State of Ohio. The judgment of the district court is AFFIRMED.

BOGGS, Circuit Judge, dissenting.

Today the court establishes a per se rule that 38 U.S.C. § 1729 entitles the Veterans Administration to recover under Ohio's Crime Victims Compensation Act for health care provided to a veteran who was injured during a violent crime in Ohio. Since this holding is inconsistent with the plain language of § 1729, I must dissent. The Ohio statute does not discriminate against the Veterans Administration and, therefore, does not violate § 1729.

### I

On January 12, 1986, veteran David F. Bernath was assaulted in a parking lot in Elyria, Ohio. Bernath suffered significant personal injuries and received initial emergency treatment at a private hospital. Subsequently, he underwent additional treatment at a VA hospital in Cleveland. As a veteran, Bernath was not required to pay for his treatment at the VA medical center. Instead, he assigned to the VA any rights he had to recover the cost of his medical care at the VA hospital from third parties.

Bernath applied for compensation under the Ohio Crime Victims Compensation Act, O.R.C. § 2743.51 *et seq.,* for the costs he incurred for his medical treatment and for nine months of wages lost as a result of his injuries. The VA also sought reimbursement pursuant to the Ohio statute for the money it had spent on Bernath's treatment. On February 12, 1988, the Ohio Court of Claims issued an opinion and order awarding Bernath compensation for the amount he had paid for his medical expenses and lost wages. The court, however, denied the VA's claim for reimbursement for the cost of treatment provided because the cost did not constitute an "economic loss" to the crime victim and was therefore unrecoverable under the Ohio law.

In response, the United States filed this suit in federal district court. The district court granted summary judgment in favor of the federal government, holding that Ohio's victims compensation statute violates § 1729 because it discriminates against the United States. According to the district court, § 1729 entitles the VA to recover from the State of Ohio.

This court reviews a grant of summary judgment de novo. The case at hand involves the interpretation of two statutes; the parties have no factual disputes. This matter of law is appropriate for summary judgment in favor of one of the parties. The court affirms the district court and forces Ohio to pay the federal government for the cost of treating Bernath. In my view, however, Ohio's statute is consistent with the requirements of § 1729 because it does not discriminate against the federal government.

### II

In 1981, Congress enacted legislation authorizing the United States to recover the reasonable costs of caring for a veteran's non-service-related disability in those cases where the veteran would be eligible under state law to receive compensation for such medical care from a third party had the care not been provided by the VA. 38 U.S.C. § 1729(a). Section 1729(a) provides in pertinent part:

(a)(1) Subject to the provisions of this section, in any case in which a veteran is furnished care or services under this chapter for a non-service-connected disability described in paragraph (2) of this

subsection, the United States has the right to recover or collect the reasonable cost of such care or services (as determined by the Administrator) from a third party to the extent that the veteran (or the provider of the care or services) would be eligible to receive payment for such care or services from such third party *if the care or services had not been furnished by a department or agency of the United States.*

(2) Paragraph (1) of this subsection applies to a non-service-connected disability—

.    .    .    .    .

(C) that is incurred as the result of a crime of personal violence that occurred in the state, or a political subdivision of a State, in which a person injured as the result of such a crime is entitled to receive health care and services at such State's or subdivision's expense for personal injuries suffered as the result of such crime. (emphasis added).

The statute further provides that "No law of any State or of any political subdivision of a State ... shall operate to prevent recovery or collection by the United States under this section...." § 1729(f).

The legislative history of § 1729 makes clear that the purpose of the statute was to eradicate and prevent *discrimination* against the federal government in several state compensation programs:

The reported bill would provide for the right of the Veterans Administration to recover the reasonable costs of care and services from a State (or political subdivision thereof), employer, employer's insurance carrier, or automobile accident reparations insurance carrier, to the extent that the veteran, or the provider of care and services to the veteran, would be eligible to receive reimbursement for such care and services if they had not been furnished by the Veterans' Administration.

.    .    .    .    .

The reported bill would strengthen and clarify the Veterans' Administration's authority to recover the costs of veterans' nonservice-connected care from

State workers' compensation, "no-fault" auto insurance and crimes of personal violence *where a veteran would have entitlement to payment or reimbursement by a third party for appropriate medical care furnished in a non-federal hospital.*

H.R.Rep. No. 79, 97th Cong., 1st Sess. 8, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1685, 1692–93 (emphasis added). Section 1729, then, prevents states from denying reimbursement for the costs of services in a federal hospital where such costs would have been paid for by the state if incurred in a non-federal hospital. In other words, the state may not deny recovery because the costs were incurred in a federal hospital rather than a non-federal one.

Both § 1729 and its legislative history unequivocally state that the right of the federal hospital to recover is entirely contingent on the veteran's right to recover given the circumstances and the particular state statutory scheme at issue. Under § 1729, the United States has the right to recover from the third party (in this case the State of Ohio) to the same extent that *"the veteran"* would be eligible to receive payment from the third party if services had not been performed by an agency of the federal government. Section 1729 prevents states from treating similarly situated federal and non-federal health care providers differently under various state compensation schemes. More precisely, the law preempts state laws that discriminate against the federal hospital because it is run by the United States government.

The right of a veteran to recover in a specific situation will depend, of course, on the provisions of the state statute creating the entitlement. Section 1729, then, does not and cannot establish a special right of recovery for veterans who are victims of crime apart from the language of the particular state victims compensation scheme at issue. By its own terms, § 1729 applies only where a veteran "is entitled to receive health care and services" under state law. Courts addressing this question have recognized that it is well within the rights of a

state to condition recovery under a victims compensation statute on various prerequisites. In *United States v. State of New Jersey; Violent Crimes Comp. Bd.*, 831 F.2d 458, 462 (3rd Cir.1987), for example, the court reasoned that:

> Subsection (a)(1) does not eliminate all prerequisites to recovery contained in state compensation statutes. It only requires that a state consider a veteran's claim as it would consider a claim by someone not treated in a VA hospital, but presenting the same injury, treatment, and surrounding circumstances, such as the existence or non-existence of insurance. Subsection (a)(2)(C) speaks in terms of recovery where a crime victim "is entitled to receive health care and services at such State's ... expense." This subsection, however, does not specify that the entitlement must come about through a non-discretionary decisionmaking process. If, through its regular decisionmaking process, the state determines that such a claimant is entitled to health care at the state's expense, the United States can recover from the state, under subsection (a)(1), the reasonable cost of treating the crime victim.

See also *United States v. State of Maryland.*, 914 F.2d 551, 555 (4th Cir.1990). In this case, the veteran is not entitled to recover under the nondiscriminatory Ohio statute for the cost of services provided by the VA, since he was not billed for those services. Since the veteran is not "entitled" to recovery here, then neither can the federal government recover under § 1729.

This analysis is not changed by § 1729(f), which preempts state statutes that "operate" to discriminate against the federal government:

> [T]he United States would have us read subsection (f) of Section [17]29 to eliminate, when the United States is the party seeking compensation, all conditions on recovery set by state victims' compensation laws. Such a reading ignores the phrase "under this section" in subsection (f). Subsection (f) is not divorced from the language of subsection (a) that allows recovery by the United States only when the veteran would be eligible to

receive payment, but for the fact that the VA provided his or her medical care. *United States v. New Jersey*, 831 F.2d at 462. Just as § 1729 does not empower the VA to force a state to compensate veteran crime victims in the absence of a state decision, embodied in a statute, to compensate crime victims generally, neither does § 1729 allow the VA to alter an existing compensatory statutory scheme to its own advantage by nullifying any general prerequisites to recovery established by the state.

Section 1729 does not entirely preempt all provisions of state victims compensation laws and automatically require payment to the federal government in these cases once a state establishes such a program. Section 1729 only requires that such laws may not discriminate against federal health care providers. Congress recognized that the effect of § 1729 would vary from state to state according to the language of the various state victims compensation acts. This fact is evidenced by the statement of the Congressional Budget Office that accompanied § 1729:

> It is extremely difficult to estimate with any precision the impact that this provision would have on VA recoveries, because the effects of the legislation would be different in each of the fifty states. State laws relating to ... victims-of-crime compensation vary widely in language and application. The interpretation of the amendment would be expected to differ among states as well.

1981 U.S.Code Cong. & Admin.News 1700, 1703. The ability of the VA to recover the costs of Bernath's care in this case depends on the language of the Ohio statute. As long as the Ohio law does not discriminate against the federal government, then this court must give effect to that law.

### III

Pursuant to the Ohio Crime Victims Compensation Act, O.R.C. § 2743.51 *et seq.*, Ohio reimburses certain expenses incurred by victims of violent crime within the state. Ohio compensates these victims for "economic loss" that has not been reimbursed by insurance or other collateral sources.

O.R.C. § 2743.51(E). "Economic loss" is defined as "economic detriment consisting only of allowable expense, work loss, funeral expense, unemployment benefits loss, and replacement services loss." *Ibid.* "Allowable expense" includes "reasonable *charges* incurred for reasonably needed products, services, and accommodations, including those for medical care, rehabilitation ... and other remedial treatment and care...." O.R.C. § 2743.51(F) (emphasis added).

Ohio's statute, then, compensates victims only for unreimbursed economic loss. Ohio has chosen to restore crime victims, to the extent that it can, to *their* situation before the crime. It has chosen not to recompense good Samaritans or those with pre-existing obligations to care for an individual who turns out to be the victim of a crime. Thus, a person who was cared for because of membership in a religious order, a university or fraternal organization, or a health maintenance organization without right of subrogation, would not be reimbursed and the organization providing care would not be paid.

A crime victim applies for an award under Ohio's compensation statute by filing an application with the Ohio Court of Claims or Court of Common Pleas. O.R.C. § 2743.56. The court then forwards the application to the Ohio Attorney General's office, which investigates the case and makes a finding of fact and a recommendation regarding the claim. O.R.C. § 2743.-58–59. The claim is then returned to a Court of Claims commissioner, who has jurisdiction to make an award of reparations for economic loss if the preponderance of the evidence establishes that the requirements for such an award have been met. O.R.C. § 2743.52. Either the Attorney General or the claimant may appeal a commissioner's decision to the Ohio Court of Claims. O.R.C. § 2743.61.

The State of Ohio argues correctly that its victims compensation scheme does not discriminate against the Veterans Administration. The statute places the VA on equal footing with all other providers of services to crime victims. An economic loss is only reimbursed by the state when it is an allowable expense actually incurred by the victim. This prerequisite does not impose any conditions upon the VA that are not applied to all other health care providers. Under the Ohio law, a veteran who is the victim of a crime is treated in exactly the same manner as a crime victim who is not a veteran. More importantly, however, in the case of a veteran crime victim, reimbursement for services rendered by a VA hospital is not automatically denied because the hospital is run by the federal government. Nor is such a case treated any differently than one involving only care given by a non-federal hospital.

When a veteran is a victim of a crime in Ohio, that veteran is entitled to reimbursement for any uncompensated economic loss. If a hospital bills the veteran for services, and that bill is not covered by some form of collateral benefit, then the veteran will be compensated by Ohio because he has incurred the requisite "economic loss." The veteran will be compensated regardless of whether the hospital that provided the care is non-federal or is run by the Veterans Administration. On the other hand, if the hospital does not charge the veteran for care, then Ohio will not provide compensation, regardless of whether the hospital is government run or not, since the victim has suffered no "economic loss." All else being equal, then, under O.R.C. § 2743.51 the VA is permitted to recover from Ohio the cost of treating a veteran injured in a violent crime to the same extent as the state would reimburse the veteran if he had been treated in a private medical facility. Therefore, the Ohio law does not violate § 1729. So long as the VA is not subject to discriminatory treatment, a state is permitted under § 1729 to prescribe certain conditions to recovery, such as a prerequisite that the victim incur an "economic loss" as a result of the crime.

The statute does not, on its face or in practice, discriminate against the VA because it does not treat two similar factual situations differently, for the sole reason that a government hospital provided services in one case but not in the other. If the VA hospital bills the veteran for care, then the expense meets the prerequisite of the

Ohio victims compensation law and the veteran victim will be reimbursed for the services. Since the VA did not bill the veteran in this case, he did not incur any economic loss and the U.S. may not recover from Ohio. Today the court holds that § 1729 requires this case to be analyzed as if the veteran had been treated in a non-federal hospital *and had received a bill.* However, there is simply nothing in the language of § 1729 or its legislative history to support the implementation of this judicially-created fiction. If Congress had intended for the courts to operate under this artificial construct when presented with cases under § 1729, then that intent could have been made explicit in the statute. To say that the fiction follows directly from the language of § 1729 is a *non sequitur.* Far from maintaining equality, this fiction raises the VA to a privileged status not contemplated by § 1729 and, indeed, directly opposed to the anti-discriminatory purposes of the provision.

The Ohio law treats the VA like any other health care provider and does not, therefore, conflict with § 1729 properly interpreted. If any other provider, public or private, chose to provide services to Bernath free of charge, an award of reparations for those services would not have been appropriate under Ohio law and would not have been made. By accepting the argument of the VA in this case, the majority requires Ohio to treat the VA *differently* than it would any other provider. The court grants the VA compensation when the victim has not incurred an uncompensated economic loss. This holding does not correct discrimination against or restore equality to the VA, but grants the federal government a privileged status. Such privilege is not required by § 1729.

According to the language of § 1729, the rights of the VA depend entirely upon the rights of the veteran under the circumstances of each case. Under § 1729, the United States is able to recover only "to the extent that the veteran" is eligible to recover under a particular state compensation scheme. § 1729(a)(2). If the veteran has a right to recover, then that recovery cannot be denied simply because services

were performed at a federal hospital. In other words, § 1729 prevents discrimination against the federal government, but it does not mandate payment to the federal government in all circumstances and under any state compensation plan. The fact that a state victims compensation statute contains a prerequisite to recovery and that the prerequisite denies recovery to the VA in this case does not, by itself, make the prerequisite discriminatory. If the prerequisite treats the VA and private providers unequally in similar circumstances, then it is discriminatory and is preempted by § 1729. If, as in this case, the prerequisite applies equally in all circumstances, there is no inconsistency with § 1729 and, therefore, no preemption.

For example, if Ohio chose to compensate all victims except those whose last names begin with the letter "W," the federal government could not use § 1729 to preempt this prerequisite and require compensation for all victims treated at VA hospitals, even for veterans whose names begin with "W," simply because the VA was sometimes denied compensation under the state requirement. Neither could the VA preempt Ohio's prerequisite under § 1729 if the VA for some reason chose only to provide health care to veterans with "W's" at the beginning of their last names. The VA could not then argue that Ohio's statutory prerequisite discriminated against the federal government. The prerequisite, albeit apparently irrational and perhaps open to attack on other grounds, would not discriminate against the federal government. In order to violate § 1729, a condition to recovery must treat federal and non-federal health care providers differently in similar circumstances.

The Veterans Administration was not denied compensation in this case because of the discriminatory operation of the Ohio law. It was denied compensation because the Ohio law operated as it should have given the circumstances, and as it would have regardless of whether unbilled services had been performed by a federal or non-federal provider. Compensation was denied because the VA chose not to bill Bernath for services, not because Ohio treated the federal government any differently than it would have treated a private hospi-

tal under identical facts. If Bernath's care had been provided by a charitable or fraternal organization or by a student health plan, for example, then he would not have been compensated under the Ohio law. Likewise, since Bernath did not incur the requisite "economic loss," the VA was denied reimbursement. Certainly, preemption of the Ohio law cannot be founded solely on the fact that the VA will be denied recovery if it does not bill its patients. No discrimination on the part of the state has been shown in this case. The fact that the VA's billing practices will often prevent it from recovering under this particular state law cannot justify holding that § 1729 mandates recovery here. Ohio's statutory prerequisite to compensation denies recovery equally and grants recovery equally. It does not discriminate.

### IV

It should also be recognized that this case raises the question of just how far it is constitutionally permissible for the federal government to go in its quest for additional state funds for support of a federal agency. It is certainly true that the Congress can make laws governing veterans' benefits as necessary and proper adjuncts to its delegated war powers, including the power to raise and support armies. *United States v. Oregon*, 366 U.S. 643, 648–49, 81 S.Ct. 1278, 1281, 6 L.Ed.2d 575 (1961). However, although these powers may indeed be broad and sweeping, they are by no means inexhaustible. While the tenth amendment will allow certain inroads into state laws pursuant to these constitutionally delegated powers, it will at some point act as a barrier to federal confiscation of state funds.

Could Congress, for example, enact a direct tax on the state treasuries to provide health care for veterans? Could it decree that veterans are "egg producers" to obtain funding from a state subsidy program for "egg producers?" At some point, the federal government may go farther than the Constitution will tolerate. In any event, a thorough analysis of the boundaries of the war powers and the relative parameters of the tenth amendment is not necessary for upholding the Ohio statute. This issue, however, is strongly implicated by striking it down. For it cannot be denied that the tenth amendment issue becomes more pronounced as the Congressional intrusion on the states becomes greater, as is the case when § 1729 is used to exempt the federal government from *nondiscriminatory* conditions of various state compensatory schemes.

### V

The Ohio statute, as interpreted and applied by the state, does not discriminate against the VA and does not, therefore, violate § 1729. The court's preemption of the Ohio statute, by its overreaching and unsupported interpretation of § 1729, leaves in its wake a new compensatory scheme that discriminates in favor of the federal government. The VA is no longer bound by the nondiscriminatory prerequisite the state chose to enact as part of the structure of its victims compensation plan. Instead, the majority carves out a special and unwarranted privilege for the federal government at the expense of the people of Ohio. I dissent.