SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**In the Matter of the Estate of Michael D. Jones, Deceased** (A-28-23) (088877)

**Argued September 10, 2024 -- Decided January 27, 2025**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether an ex-spouse's rights as the pay-on-death beneficiary on her deceased ex-husband's U.S. savings bonds were superseded by the parties' divorce.

Decedent Michael Jones purchased Series EE federal savings bonds while he was married to Jeanine Jones, and he designated Jeanine as the pay-on-death beneficiary. When the couple divorced, they entered into a divorce settlement agreement (DSA) that provided for the disposition of certain property but did not specifically list and dispose of the savings bonds. The DSA stated that any marital asset not listed "belongs to the party who has it currently in their possession." The DSA further required Michael to pay Jeanine a total of $200,000 over a period of time in installments. After Michael's death, Jeanine redeemed the savings bonds.

Jeanine filed a creditor's claim against Michael's Estate seeking to be reimbursed the $100,000 she claimed was still owed to her under the terms of the DSA. Michael's Estate argued that Michael's financial obligations to Jeanine were satisfied through her redemption of the savings bonds. The trial court agreed with the Estate that the savings bonds counted towards Michael's $200,000 obligation under the DSA and dismissed Jeanine's claim for reimbursement.

The Appellate Division reversed, holding that N.J.S.A. 3B:3-14, which governs the revocation of property transfers by divorce, conflicted with and was therefore preempted by federal law. 477 N.J. Super. 203, 224 (App. Div. 2023). The appellate court held that the value of the redeemed bonds should not be credited towards the Estate's DSA obligations because Jeanine was the sole owner of the bonds at the time of Michael's death under the applicable federal regulations. Id. at 227. The Court granted certification. 256 N.J. 519 (2024).

**HELD:** Preemption is not an issue here because the N.J.S.A. 3B:3-14 does not conflict with the federal regulations that govern U.S. savings bonds. Given that the DSA did not direct the disposition of the savings bonds, the bonds have no bearing

1

on Michael's -- and later the Estate's -- obligation to pay Jeanine $200,000, and the bonds' value should not have been credited against that obligation. Pursuant to the DSA, the Estate must make whatever payments remain to Jeanine.

1. The Court reviews the federal regulations that govern Series EE bonds. 31 C.F.R. § 353.15 provides that "[s]avings bonds are not transferable . . . , except as specifically provided in these regulations." One exception is that "[a] bond may be registered in the name of one individual payable on death to another." Id. at .7(a)(3). If the bond owner dies and is survived by the beneficiary, "the beneficiary will be recognized as the sole and absolute owner of the bond." Id. at .70(c)(1). The Treasury will not recognize judicial determinations that "impair[] the rights of survivorship conferred by these regulations upon a . . . beneficiary." 31 C.F.R. § 353.20(a). However, the Treasury "will recognize a divorce decree that ratifies or confirms a property settlement agreement disposing of bonds," and a savings bond may be reissued "to eliminate the name of one spouse" or to substitute one spouse's name for the other pursuant to the divorce decree. Id. at .22(a). "[I]f established by valid, judicial proceedings," the Treasury will also recognize claims "against an owner of a savings bond and conflicting claims of ownership of, or interest in, a bond between coowners or between the registered owner and the beneficiary." Id. at .20(b). To establish the validity of a judicial proceeding, a party must submit "copies of the final judgment, decree, or court order." Id. at .23(a). (pp. 12-14)

2. N.J.S.A. 3B:3-14 governs the revocation of probate and non-probate transfers by divorce. As relevant here, N.J.S.A. 3B:3-14(a)(1)(a) states that "[e]xcept as provided by the express terms of a governing instrument," a divorce revokes any revocable "dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument." N.J.S.A. 3B:3-14(b)(2) specifies that, for purposes of Section 3-14, "'governing instrument' means a governing instrument executed by the divorced individual before the divorce." The general definitions section applicable to Title 3B defines a governing instrument to include "security registered in beneficiary form with the designation 'pay on death.'" N.J.S.A. 3B:1-1. And it defines "security" to include any "bond." Id. at -2. (pp. 14-15)

3. The concept of preemption is derived from the Supremacy Clause of the United States Constitution, which establishes that federal law takes precedence over any state laws to the contrary. Conflict preemption occurs when state and federal obligations are inconsistent, making it impossible to comply with both. Here, New Jersey law does not conflict with federal survivorship regulations. N.J.S.A. 3B:3-14(a) explicitly defers to "the express terms of a governing instrument," and the pay-on-death U.S. savings bonds in dispute here, as regulated by the federal government that issued them, are the relevant "governing instruments," see N.J.S.A. 3B:1-1 to -2. Because N.J.S.A. 3B:3-14(a) does not supersede the terms of a governing instrument, and because the federal regulations governing the bonds at issue here

2

prevent the <u>automatic</u> revocation of a pay-on-death provision following a divorce, no such automatic revocation occurred under the exception set forth in Section 3-14(a). As the New Jersey statute incorporates and follows the relevant federal regulations, preemption does not apply here.  (pp. 15-18)

4.  Nor was Jeanine's interest in the bonds revoked through the DSA.  That agreement is silent regarding the bonds, and its broad catchall provision -- that "[a]ny marital asset not listed below <u>belongs to the party who has it currently in their possession</u>" -- simply confirms Jeanine's ownership.  The Estate is correct that the U.S. savings bonds, which were marital assets not listed in the DSA, belonged to Michael at the time the DSA was executed and during his life.  The moment Michael passed away, however, Jeanine became the sole owner of the bonds as the pay-on-death beneficiary per 31 C.F.R. § 353.70(c)(1).  The record contains no suggestion that Michael took any steps to have the bonds reissued in only his name or to provide evidence of the DSA to the Department of the Treasury as required by the regulations.  The trial court's holding, which impaired Jeanine's right of survivorship as beneficiary of the bonds based on nothing more than its assumption that Michael likely intended to do so, is exactly the type of judicial determination the federal regulations do not allow.  Thus, although the Court disagrees with the Appellate Division's determination that Section 3-14(a) is preempted by federal law, the Appellate Division correctly reversed the trial court's judgment.  (pp. 18-21)

       **AFFIRMED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.**

SUPREME COURT OF NEW JERSEY

A-28 September Term 2023

088877

In the Matter of the
Estate of Michael D. Jones,
Deceased.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
477 N.J. Super. 203 (App. Div. 2023).

Argued                    Decided
September 10, 2024    January 27, 2025

Thomas A. Whelihan argued the cause for appellant
Shontell A. Jones (The Whelihan Law Firm, attorneys;
Thomas A. Whelihan, on the briefs).

Michael Confusione argued the cause for respondent
Jeanine Jones (Hegge & Confusione, attorneys; Michael
Confusione, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this matter, we must determine whether an ex-spouse's rights as the

pay-on-death beneficiary on her deceased ex-husband's U.S. savings bonds

were superseded by the parties' divorce.

Decedent Michael Jones purchased U.S. savings bonds while he was

married to Jeanine Jones. Michael designated Jeanine as the pay-on-death

1

beneficiary for the savings bonds.[1]  When the couple divorced, they entered into a divorce settlement agreement (DSA) that provided for the disposition of certain property but did not specifically list and dispose of the savings bonds. The DSA further required Michael to pay Jeanine a total of $200,000 over a period of time in installments.

After Michael's death, Jeanine redeemed the savings bonds, which were worth approximately $77,800.  At the time of his death, Michael had paid Jeanine approximately $110,000 towards his $200,000 obligation under the DSA.

Michael's daughter from a previous relationship, Shontell Jones, who was the administrator of Michael's Estate, sought a determination that the Estate had fulfilled Michael's obligations under the DSA, arguing that the $77,800 in savings bonds and other cash Jeanine retrieved from Michael's accounts after his death counted toward the $200,000 Michael owed to Jeanine.  The trial court agreed with the Estate and concluded that the savings bonds were part of the amount due to Jeanine under the parties' DSA and counted towards Michael's $200,000 obligation.

---

[1]  We refer to the relevant parties by their first names to avoid confusion.  We intend no disrespect by this informality.

2

The Appellate Division reversed, finding that the DSA did not divest Jeanine of her rights to the savings bonds and that the trial court erred in applying state law to decide the disposition of the bonds instead of the federal regulations governing U.S. savings bonds.

We granted certification. For the reasons that follow, we affirm as modified the judgment of the Appellate Division which held that Jeanine's entitlement to the savings bonds was separate and apart from Michael's obligations pursuant to the DSA.

I.

A.

Jeanine and Michael married on June 16, 1990. In or around August 1990, Michael began purchasing Series EE federal savings bonds through his employer and listed Jeanine as the pay-on-death beneficiary. Jeanine was aware that Michael had purchased the bonds and that he had designated her as the pay-on-death beneficiary.

Jeanine and Michael separated in April 2016, and Jeanine moved out of their marital home. The two attempted to reconcile and preserve their marriage the following year but remained in their separate residences. According to Jeanine's deposition, their potential reconciliation was premised on certain stipulations, including couples counseling and Michael's promise to

3

compensate Jeanine for his financial deficiencies as a husband during their marriage. To fulfill his agreed-upon obligation, Michael rendered $12,000 in payments to Jeanine between June and August 2017. The couple never attended counseling and ultimately did not reconcile.

On October 19, 2017, Michael and Jeanine drafted a divorce settlement agreement to govern the terms of their divorce. On December 6, 2017, Jeanine officially filed for divorce. The final judgment of divorce -- which incorporated the DSA -- was entered on January 17, 2018.

The DSA provided that Michael would pay Jeanine a sum of $200,000, following a specific payment schedule, detailed as follows:

> (a) Thursday, October 19, 2017, [Michael] will deliver a personal check to [Jeanine in the amount of] $4,500.00 upon receipt of this notarized document.
>
> (b) Tuesday, November 20, 2017, [Michael] has agreed to deliver a second check to [Jeanine] in the amount of $45,500.00.
>
> (c) The remaining balance of $150,000.00 shall be delivered to [Jeanine] over the next three years beginning 2018. Each payment shall be in the amount of $50,000.00, payable by the end of each year ending December 2020.

The DSA also included provisions regarding the distribution of property, assets, and debt. Concerning the distribution of assets, Section 1 of the DSA stated:

4

> For an equitable division of marital property, assignment of non-marital property, and as for the payment of marital debts, the parties shall make the transfers, conveyances, and assignments in accordance with the terms, provisions, covenants as follows below. Any marital asset not listed below belongs to the party who has it currently in their possession.

Regarding personal property, the DSA provided: "Husband shall have exclusive use, possession, and ownership of all items titled in his name solely including cash on hand, cash in bank, [and] all personal affects . . . ." Additionally, the parties waived rights to the other's estate: "[t]he Wife will waive any and all rights to inherit part of the Estate of the Husband at his death, only if the Husband has fulfilled his financial obligation on or by December 31, 2020."

Pursuant to the terms of the DSA, Michael paid Jeanine approximately $110,000 between October 2017 and December 2019, in accordance with the DSA's payment schedule.[2]

On November 9, 2019, Michael was admitted to the hospital. He suffered from a perforated ulcer and had to undergo emergency surgery. On November 14, 2019, while still in the hospital, Michael appointed Jeanine as power of attorney over his PNC bank account. There were no witnesses

---

[2] The record is unclear regarding the exact amount of money Michael paid Jeanine.

present when he signed the power of attorney document. That same day, Jeanine, utilizing her authority as power of attorney, withdrew $17,000 from Michael's PNC bank account. According to Jeanine, she retrieved that money to pay bills and manage Michael's household while he was in the hospital.

Michael died intestate on November 16, 2019. Jeanine later redeemed the Series EE federal savings bonds Michael purchased years prior for a sum of $77,864.40.

B.

On February 14, 2020, Shontell filed an amended complaint and order to show cause seeking numerous forms of relief, including appointment as administrator of Michael's Estate; an accounting from Jeanine of all financial transactions related to Michael's accounts at the time of his death; a full and complete accounting of items removed from Michael's home; and an order directing Jeanine to vacate Michael's home and to pay the Estate rent from the day she took possession of Michael's home, as well as reimbursement for costs of utilities during her occupancy of Michael's home.

In a June 12, 2020 order, the court granted Shontell's request to be appointed administrator of the Estate. The court also granted Shontell's requests for a full accounting from Jeanine, directed Jeanine to vacate Michael's home, and directed Jeanine to pay the Estate rent and utility costs

6

for Jeanine's occupancy. Pursuant to the order, a hearing was scheduled regarding Jeanine's entitlements under the DSA.

Jeanine filed a creditor's claim seeking to be reimbursed for her expenditures on Michael's behalf as well as the $100,000 she claimed was still owed to her under the terms of the DSA. Shontell, in her capacity as administrator of Michael's Estate, filed a notice of rejection of Jeanine's claim pursuant to N.J.S.A. 3B:22-7. The Estate argued that Michael's financial obligations to Jeanine under the DSA had already been satisfied through her redemption of the federal savings bonds in the amount of $77,864.40. The Estate further continued to claim that Jeanine owed money to the Estate.

Following discovery, the Estate moved for partial summary judgment. At the conclusion of the April 23, 2021 hearing on the motion, the trial court found that the $200,000 Michael owed Jeanine under the terms of the DSA had been satisfied due to her redemption of the savings bonds. The trial court granted the Estate partial summary judgment. It dismissed with prejudice Jeanine's claim for additional payments pursuant to the DSA, determining that Michael's obligations were satisfied in full. The court reserved judgment on the Estate's claim for reimbursement in the amount of $16,864.40 from Jeanine.

Thereafter, Jeanine moved for reconsideration.  At oral argument, Jeanine argued that the bonds were not specifically included in the DSA.  Jeanine further asserted that federal rules regarding bonds governed because the regulations preempt any agreement between the parties.[3]  The court denied Jeanine's motion for reconsideration, finding she was unable to establish that there was a palpable error or mistake.  The court later entered an order requiring Jeanine to pay the Estate $27,862.70 and denied Jeanine's request for reimbursement of expenses she allegedly incurred on behalf of the Estate after Michael's death.

Jeanine appealed the order granting partial summary judgment as well as the order denying her motion for reconsideration.  In re Est. of Jones, 477 N.J. Super. 203, 207 (App. Div. 2023).  The Appellate Division, reviewing the grant of partial summary judgment de novo, reversed the trial court's judgment.  Id. at 215-16, 218.  The appellate court disagreed "with the judge's legal determinations regarding the interpretation of the DSA as well as the application of state law to the disposition of federal savings bonds in the circumstance of this case."  Id. at 218.  Furthermore, relying on Free v. Bland, 369 U.S. 663 (1962), as well as Yiatchos v. Yiatchos, 376 U.S. 306 (1964), the

---

[3]  The record is not clear as to whether Jeanine had previously raised the issue of preemption or whether she raised the issue for the first time in her motion for reconsideration.

Appellate Division found that in the circumstances presented here, the applicable state law was preempted by federal law. Id. at 224.

As such, the Appellate Division held that the value of the redeemed bonds should not be credited towards the Estate's DSA obligations because under the applicable federal regulations, Jeanine was the sole owner of the bonds at the time of Michael's death and was entitled to the payment. Id. at 227. In addition, the court stated that "[i]n the absence of any allegation of fraud or breach of trust, application of N.J.S.A. 3B:3-14 in this case, which allowed the estate to improperly avoid the consequences of the bonds' beneficiary registration, conflicts with the governing federal regulations under Free and Yiatchos and is therefore preempted." Ibid.

We granted the Estate's petition for certification. 256 N.J. 519 (2024).

II.

A.

The Estate urges this Court to reverse the Appellate Division's judgment, asserting that the court overstepped its authority in its determination that the DSA did not resolve Jeanine's rights with respect to the bonds. The Estate also argues that the Appellate Division incorrectly concluded that federal savings bond regulations preempt N.J.S.A. 3B:3-14. The Estate asserts that the state statute is not preempted by the federal regulations and that

9

N.J.S.A. 3B:3-14 "removed Jeanine as the beneficiary of the savings bonds after she and Michael divorced."

## B.

Jeanine urges this Court to affirm the Appellate Division's decision that the bonds were not part of the $200,000 owed to her under the DSA. Jeanine now argues, however, that we should not find that preemption applies here. Rather, Jeanine contends that this Court should find that the exception to automatic revocation within N.J.S.A. 3B:3-14, which states, "[e]xcept as provided by the express terms of a governing instrument," governs this appeal. Jeanine asserts that the express terms of the governing instrument in this context are the federal rules and regulations governing the savings bonds. According to Jeanine, under that reading of the statute, Jeanine's beneficiary status would not have been automatically revoked upon divorce pursuant to the federal regulations.

## III.

## A.

We review a trial court's grant or denial of a motion for summary judgment de novo, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). The appellate court considers "whether the competent evidential materials presented, when viewed in the

light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Padilla v. Young Il An, 257 N.J. 540, 547 (2024) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). To reach that determination in this case, we must interpret both the relevant statutes and the DSA.

We review questions of statutory interpretation de novo, without deference to the trial court's findings. Kocanowski v. Township of Bridgewater, 237 N.J. 3, 9 (2019). When interpreting a statute, the Legislature's intent is paramount to a court's analysis, and the plain language of the statute is crucial to determining legislative intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). We therefore begin our review with the plain language of the statute, resorting to extrinsic evidence only when "there is ambiguity in the statutory language that leads to more than one plausible interpretation." Ibid.

Appellate courts also review contracts de novo, with no deference paid to the trial court's interpretation. Kieffer v. Best Buy, 205 N.J. 213, 222 (2011). "[C]ourts enforce contracts 'based on the intent of the parties, the express terms of the contract, surrounding circumstances and the underlying

11

purpose of the contract.'" In re County of Atlantic, 230 N.J. 237, 254 (2017) (quoting Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 118 (2014)).

B.

1.

At issue in this case is Jeanine's redemption of U.S. savings bonds. The U.S. Treasury holds the power to issue savings bonds, subject to the approval of the President. 31 U.S.C. § 3105(a). The Secretary of the Treasury has been delegated the authority to make prescriptions regarding the savings bonds issued, including the power to determine, amongst other things, "the form and amount of an issue and series;" "the way in which they will be issued;" "the conditions, including restrictions on transfer, to which they will be subject;" [and] "conditions governing their redemption." Id. at (c). Treasury regulations governing the "terms and conditions" of Series EE bonds are set forth in Part 353 of Title 31 of the Code of Federal Regulations. 31 C.F.R. § 353.0.

31 C.F.R. § 353.15 provides that "[s]avings bonds are not transferable and are payable only to the owners named on the bonds, except as specifically provided in these regulations and then only in the manner and to the extent so provided." One such exception through special provision is that "[a] bond may be registered in the name of one individual payable on death to another." 31

12

C.F.R. § 353.7(a)(3).  The federal regulations also provide guidance on

determining bond ownership upon the death of the bond owner:

> If the owner of a bond registered in beneficiary form has died and is survived by the beneficiary, upon proof of death of the owner, the beneficiary will be recognized as the sole and absolute owner of the bond. Payment or reissue will be made as though the bond were registered in the survivor's name alone. A request for payment or reissue by the beneficiary must be supported by proof of death of the owner.
>
> [Id. at .70(c)(1).]

To protect the right of survivorship that they confer, the regulations specify

that the Treasury will not recognize judicial determinations that either "give[]

effect to an attempted voluntary transfer inter vivos of a bond" or "impair[] the

rights of survivorship conferred by these regulations upon a coowner or

beneficiary." Id. at .20(a).

The Treasury, however, "will recognize a divorce decree that ratifies or

confirms a property settlement agreement disposing of bonds or that otherwise

settles the interests of the parties in a bond," and a savings bond may be

reissued "to eliminate the name of one spouse as owner, coowner, or

beneficiary or to substitute [their name] for that of the other spouse . . .

pursuant to the [divorce] decree." Id. at .22(a).  "[I]f established by valid,

judicial proceedings," the Treasury will also recognize claims "against an

owner of a savings bond and conflicting claims of ownership of, or interest in,

13

a bond between coowners or between the registered owner and the beneficiary." Id. at .20(b).  To establish the validity of a judicial proceeding, a party must submit "certified copies of the final judgment, decree, or court order," with additional requirements applicable in certain circumstances.  Id. at .23(a).

2.

N.J.S.A. 3B:3-14 governs the revocation of probate and non-probate transfers by divorce.  As relevant here, the statute reads:

> a. Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, a divorce or annulment:
>
>   (1) revokes any revocable:
>
>     (a) dispositions or appointment of property made by a divorced individual to his former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse.
>
> [N.J.S.A. 3B:3-14(a)(1)(a).]

Another provision specifies that, for purposes of Section 3-14, "'governing instrument' means a governing instrument executed by the divorced individual before the divorce or annulment." Id. at (b)(2).  The

14

general definitions section applicable to Title 3B of the New Jersey Statutes, in turn, defines a governing instrument to include "a deed, will, trust, insurance or annuity policy, account with the designation 'pay on death' (POD) or 'transfer on death' (TOD), <u>security registered in beneficiary form with the designation 'pay on death' (POD) or 'transfer on death' (TOD)</u>."  N.J.S.A. 3B:1-1 (emphasis added).  And it defines "security" to include, among other items, "any note, stock, treasury stock, [or] bond."  <u>Id.</u> at -2; <u>see also</u> 15 U.S.C. § 77b(a)(1) ("[T]he term 'security' means any note, stock, treasury stock, security future, security-based swap, bond . . . .").

IV.

Having identified the relevant statutes, regulations, and legal principles, we turn to the arguments presented.

A.

We begin with the argument -- advanced by both sides -- that, contrary to the Appellate Division's determination, N.J.S.A. 3B:3-14 does not conflict with and is therefore not preempted by the federal statutes and regulations that govern U.S. savings bonds.  We agree with the parties that preemption is not an issue here.

The concept of preemption is derived from the Supremacy Clause of the United States Constitution, which establishes federal law as "the supreme Law

of the Land" that takes precedence over any state laws to the contrary.

Murphy v. NCAA, 584 U.S. 453, 477 (2018); see U.S. Const. art. VI, cl. 2.

The United States Supreme Court has identified three types of preemption:

conflict, express, and field preemption. Murphy, 584 U.S. at 477. As relevant

here, conflict preemption occurs when state and federal obligations are

inconsistent, making it impossible to comply with both. See Mut. Pharm. Co.,

Inc. v. Bartlett, 570 U.S. 472, 480 (2013).

In Free v. Bland, the Court considered whether a Texas community

property law -- under which a son, as his deceased mother's heir, would have

an interest in U.S. savings bonds issued to both of his parents -- was

preempted by the federal regulation prohibiting interference with the right of

survivorship of bond co-owners. 369 U.S. at 664-65. The Court found a

conflict and held "that the state law which prohibits a married couple from

taking advantage of the survivorship provisions of United States Savings

Bonds merely because the purchase price is paid out of community property

must fall under the Supremacy Clause." Id. at 670.

The Court addressed a similar issue in Yiatchos v. Yiatchos, in which

the deceased had purchased savings bonds with community property belonging

to himself and his wife but had named his brother as the pay-on-death

beneficiary. 376 U.S. at 307-08. The decedent's will "nam[ed] his wife as

16

executrix and bequeath[ed] all cash and bonds owned by him at the time of his death to his brother, four sisters and a nephew," and the Washington state courts upheld the terms of the will.  Id. at 308.  Expanding on Free, the United States Supreme Court held that "the survivorship provisions of the federal regulations must control, preempting, if necessary, inconsistent state law which interferes with the legitimate exercise of the Federal Government's power to borrow money."  Id. at 311.  The Court found that at least half of the bonds -- and possibly all of the bonds, if the wife failed to show that she had not consented to the designation of the brother as beneficiary -- belonged to the brother, because Washington's community property law could not override federal survivorship provisions.  Id. at 312.

Here, however, New Jersey law does not conflict with federal survivorship regulations.  On the contrary, the statute explicitly defers to "the express terms of a governing instrument," N.J.S.A. 3B:3-14(a), and the pay-on-death U.S. savings bonds in dispute here, as regulated by the federal government that issued them, are the relevant "governing instruments," see N.J.S.A. 3B:1-1 to -2.

As noted above, the relevant federal regulations collectively prohibit the automatic revocation that might otherwise take place under Section 3-14(a).  See 31 C.F.R. § 353.15 (setting forth basic rule of non-transferability); id. at

17

.7(a)(3), .70(c)(1) (creating and establishing the terms of an exception to the no-transfer rule for a pay-on-death beneficiary); id. at .20(a) to (b) (protecting the right of survivorship conferred in pay-on-death bonds by invalidating judicial determinations giving effect to inter vivos transfers while recognizing claims "between coowners or between the registered owner and the beneficiary, if established by valid, judicial proceedings"); id. at .22(a) (allowing transfers upon the ratification or confirmation of a property transfer through a divorce decree and permitting reissuance of a bond "to eliminate the name of one spouse" or to substitute one spouse's name for the other).

Because N.J.S.A. 3B:3-14(a) does not supersede the terms of a governing instrument, and because the terms of the bonds at issue here prevent the automatic revocation of a pay-on-death provision following a divorce, no such automatic revocation occurred under the exception set forth in Section 3-14(a). As the New Jersey statute incorporates and follows the relevant federal regulations, we agree with the parties that preemption does not apply here.

### B.

We therefore turn to the Estate's argument that Jeanine's interest in the bonds was revoked by virtue of the DSA between Jeanine and Michael. We find that it was not.

18

Michael purchased the disputed bonds during his marriage to Jeanine and named Jeanine as the pay-on-death beneficiary. Thus, absent a valid transfer or removal of Jeanine's status as beneficiary, Jeanine became, from the moment of Michael's death, the sole owner of the bonds under 31 C.F.R. § 353.70(c)(1).

The Department of the Treasury permits the reissuance of bonds when a divorce decree ratifies or confirms "a property settlement agreement disposing of bonds or that otherwise settles the interests of the parties in a bond." 31 C.F.R. § 353.22(a). A party can establish the validity of the judicial proceedings by submitting certified copies of the final judgment, decree, or court order. Id. at .23(a).

The DSA in this case, however, is completely silent regarding the bonds. Indeed, the Estate's own argument, to which we turn next, that the catchall provision in Section 1 of the DSA is the only place in which the savings bonds are contemplated, essentially concedes that the bonds are absent from the agreement. And the record contains no suggestion that Michael took any steps to have the bonds reissued in only his name or to provide evidence of the DSA to the Department of the Treasury as required by the regulations. See id. at .22(a), .23(a).

19

The Estate argues that the DSA's broad catchall provision compels the equitable distribution of the U.S. savings bonds. That provision states that "[a]ny marital asset not listed below belongs to the party who has it currently in their possession." (emphasis added). The Estate is correct that the U.S. savings bonds, which were marital assets not listed in the DSA, belonged to Michael at the time the DSA was executed and during his life. The moment Michael passed away, however, Jeanine became the sole owner of the bonds as the pay-on-death beneficiary per 31 C.F.R. § 353.70(c)(1).

The Department of the Treasury will not recognize "a judicial determination that impairs the rights of survivorship conferred by [the] regulations upon a coowner or beneficiary." Id. at .20(a). The trial court's holding here -- which assumed that Michael sought to divest Jeanine of the savings bonds by virtue of their divorce -- is exactly the type of judicial determination the federal regulations do not allow. The trial court's ruling impaired Jeanine's right of survivorship as beneficiary of the bonds based on nothing more than its assumption that Michael likely intended to do so. The trial court did so even though the terms of the parties' DSA -- which did not impair Jeanine's right -- should govern under both state law contract principles, see County of Atlantic, 230 N.J. at 254, and the federal regulations that require clear expression in a divorce decree and further steps, like

20

reissuance and proof of valid judicial proceedings, see 31 C.F.R. § 353.22(a), .23(a). In essence, the trial court's decision accomplished what N.J.S.A. 3B:3-14(a) declines to do through its deference to governing instruments: the decision created an automatic transfer of the bonds notwithstanding state and federal statutes and regulations preventing such a transfer. Thus, although we disagree that Section 3-14(a) is preempted by federal law, the Appellate Division correctly reversed the trial court's judgment.

Given that the DSA did not direct the disposition of the savings bonds, the bonds have no bearing on Michael's -- and later the Estate's -- obligation to pay Jeanine $200,000. The approximately $77,800 in savings bonds that Jeanine redeemed upon Michael's death should not have been credited against the $200,000 because the bonds were separate and apart from that obligation. Pursuant to the DSA, the Estate must make whatever payments remain to Jeanine of the $200,000 amount.

V.

For the foregoing reasons, the Appellate Division's judgment is affirmed as modified.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, WAINER APTER, FASCIALE, and NORIEGA join in JUSTICE PIERRE-LOUIS's opinion.

21